## LOWRY v. SEABOARD AIRLINE R. CO.

No. 12361.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1948.

Chester Bedell, and Nathan Bedell, both of Jacksonville, Fla., for appellant.

Charles R. Scott and William L. Durden, both of Jacksonville, Fla., for appellee.

Before HUTCHESON, SIBLEY, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant sued appellee for the homicide of his eighteen year old daughter at a grade crossing on 63rd Street in the City of Jacksonville, suing under Florida Statutes of 1941, Sect. 768.03, F.S.A. touching "death by wrongful act, negligence, carelessness or default". The case was removed to the District Court because of diversity of citizenship. The declaration alleged that the crossing was in a thickly populated section and was much used and was specially dangerous because the view was obstructed and there were no safety devices, and that the train which killed Miss Lowry was operated carelessly and negligently so as to strike the automobile which she was driving and inflict injuries on her of which she died. The answer denied the obstructions or that the crossing was unusually hazardous and that the railroad company was under duty to install safety devices, and averred that it used due care, but that Miss Lowry drove at high speed in front of the train of whose presence she knew or should have known had she been looking or listening in the exercise of ordinary care and caution, and that her negligence was the sole proximate cause of her injuries. Evidence was heard before a jury, who on the court's instruction rendered a verdict of not guilty. This action of the court is the main error urged on this appeal, but two other rulings are also specified as error which we will first mention.

1. Plaintiff offered to prove that at the same crossing there had been a similar collision between a train and an automobile fifteen months previously, and another three years before that, to show the dangerous character of the crossing.

The evidence was properly rejected as irrelevant. It is not claimed that there was a defect in the construction of the crossing which was causing accidents, or that any obstruction to view was on the railroad's right of way; so that in each case there would have to be an enquiry as to whether the fault was that of those running the train or the driver of the car. If evidence be admitted of a prior collision the company would have the right to show, if it could, that its servants were not to blame and three cases would have to be tried instead of one. Fixing the blame in another case would not fix it in this one. We can conceive of a situation where a succession of accidents might tend to show special danger and the need of special precaution, but this is not such.

■■ 2. The court refused to have the jury taken to view the crossing, which was several miles distant. There is no right to have such a view in this character of suit. The matter lies in the discretion of the court. Houston Coca-Cola Bottling Co. v. Kelly, 5 Cir., 131 F.2d 627. Maps and photographs were in evidence from both sides which fully show the situation as it was at the time of the occurrence. There was no abuse of discretion.

■■ 3. The common law of negligence is in general in force in Florida, but is modified by statute as to the operation of railroads. The statute, as found in Florida Statutes of 1941, Sect. 768.05, F.S.A., provides that a railroad company shall be liable for damage done to persons or property by the running of its locomotives, cars or other machinery unless the company shall make it appear that their "agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." It is settled that if the company did exercise such care there is no liability. Section 768.06, headed "Comparative Negligence", provides: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence." The emphasized words, in view of what follows, apply not only where there was no negligence of the company, but also where the injured party's negligence was so great and the circumstances such as to make it the sole proximate cause of the injury. The statute continues: "If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of the recovery" shall be apportioned as provided. On the motion for instructed verdict the company's contention was that it was without fault, and the sole proximate cause of the injury was the recklessness of Miss Lowry in crossing as she did. Her father's contention was that if she was to blame, it was not recklessness but mere negligence in ignorance of the train's approach, and that the company's agents were also at fault, so that there was a jury issue as to whether there should not be apportioned damages.

■■ Another question of law discussed was whether the jury could determine that the absence of automatic gates and warning lights which flashed continuously on the approach of a train, such as the company had voluntarily installed where its track crossed Main Street three blocks away from 63rd Street, was negligence. Although the testimony is ample that 63rd Street crossing is much used, and one witness said as much used as Main Street crossing, we do not think a jury could impose the installation of such devices as a specific duty. Neither the Legislature nor the city government has required it, though either has the power, and custom and general use has not made them the ordinary equipment of a railroad crossing. The question was faced on similar facts in Atlantic Coast Line R. Co. v. Wallace, 61 Fla. 93, 54 So. 893, and the court's conclusion as stated in headnote 4 was: "In an action against a common carrier for negligence, while a determination of whether there was negligence does not depend solely upon a compliance with the requirements of statutes, ordinances, or other lawful governmental regulations, for circumstances may require additional precautions and care, yet the prescribing of particular facilities that may be regarded as essential or useful in preventing injuries from trains at railroad crossings in municipal corporations or elsewhere is a function that is legislative and administrative in its nature." In the earlier case

of Florida Central & P. R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338, 341, 79 Am.St. Rep. 149, it was said that an instruction that "a railroad company operating its trains on the thoroughfare of a village must use greater care than in less frequented localities, and any neglect of any precautions proper in the peculiar circumstances of the locality constitutes negligence" was properly given the jury. It was added that the duties of a railroad company in respect of care in operating its trains are dictated and measured by the exigencies of the occasion and in the light of the conditions of things at the place where and the time when an accident happens. These principles have not been departed from in Florida. They are sustained elsewhere by Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485, and Cummings v. Pennsylvania R. Co., 310 Pa. 39, 151 A. 590, annotated in 71 A.L.R. 1156. The true question here for a jury is not whether safety devices ought to have been installed as a specific ground of negligence, but the question is whether, both parties to the occurrence knowing the crossing was unprotected by such devices and that it was much used, exercised the reasonable care and caution that all the circumstances and conditions then and there present required of each, the jury usually being the judge.

4. The evidence is clear that Miss Lowry, being a high school senior, was an experienced and capable driver, lived in the neighborhood and was familiar with the crossing of 63rd Street over the railroad. Some 7,500 people lived in the two voting precincts which were separated by the railroad along there. The street was paved and was the only street which afforded a crossing over the railroad between 65th and 44th Streets, and it was much travelled. The city busses crossed there, and it was their custom to stop at the crossing whether a train was in sight or not, and to take on and let off passengers. On the evening in question, Feb. 25th, 1947, Miss Lowry had gone across the crossing to see a friend, and at 8 p. m. was returning. A large city bus ahead of her stopped about twelve feet from the tracks. She came up behind it, and there being no one approaching in the opposite direction, she ran to the left around the bus and on to the crossing and was struck by a freight train of sixty-six cars coming from her right on the other side of the bus. Her car was caught upon the cowcatcher and carried 566 feet before the train could stop, though emergency brakes were applied just before the collision, and sand and reversal of the engine were also used. She was killed. The train was an extra, not running on a usual schedule. There was a house between it and the approach to the crossing which obscured the view between the locomotive and car till the car came within sixty-seven feet of the track. The back of the bus appears to have been fifty or sixty feet from the track, so there was a bare chance to see the train between house and bus, and a clear view after passing the bus. The fireman and flagman on the train saw the halted bus, and the reflection of the car's lights on the rear of the bus, but did not see the car itself till it ran around the bus to pass it, when they shouted to the engineer and he applied brakes. The bus driver had stopped according to custom, opened his door and he heard the engine blow and saw its headlight. He did not notice the car till it was passing him, and almost immediately it was struck. On this brief view he thought the car must have been going forty miles per hour, and the fireman and flagman thought the same. The bus driver testified that he supposed the driver thought he had stopped for passengers and was passing around him as often happened. The fireman also testified that he had observed that cars sometimes stopped behind a halted bus, but some came around it before stopping at a crossing. Miss Lowry cannot tell her version of it, what she saw or was trying to do. The evidence in our judgment does not demand a finding that she saw the train and recklessly drove around to beat it across the crossing. She may have thought the bus had stopped for passengers and, not expecting a train at that hour, may have gone thoughtlessly across the tracks without looking and controlling her speed till too late. But even so, it would seem that she was negligent. Her contributory negligence would bar her under the common law, but not under the Florida statute unless she injured her-

self voluntarily or her negligence was the sole proximate cause of the injury. It is necessary to consider whether the railroad company was guilty also of negligence.

It had erected the statutory signpost for crossings, but Miss Lowry knew all about the crossing without that. A statute also required the ringing of the bell within the limits of municipalities. Engineer and fireman testify that they had an automatic bell ringer which was started at the city limits beyond the crossing of Main Street and continued till the train was stopped after the accident. No other witness heard any bell at any time. The evidence from the train crew is that it was customary to blow four blasts of the whistle at each crossing, but there had been complaint from the residents of the neighborhood of too much blowing, so that the company had by a bulletin directed the engineers to blow more softly, "blow as calm as possible" the fireman said it read. Engineer and fireman testified they blew accordingly for Main Street crossing, for that at 65th Street and that at 63rd Street, three blocks. The bus driver, listening, heard the whistle at least once. No one else appears to have heard it. Two police officers cruising in their car on Main Street were halted by the flashing lights there, saw the train passing and before it got by saw the sparks fly from the wheels on the application of emergency brakes, and knowing there must have been an accident hastened by another street to it. They heard no whistle blown for any crossing. They both said the train was running fast just before the brakes were applied, one estimated forty miles per hour, and the other twenty-five to forty miles. Another witness put it as high as sixty miles. The train crew say twenty-five miles, which was the speed authorized by the company in that locality. It is undisputed that the train could not with all effort be stopped till it had gone 566 feet beyond the crossing. There is no evidence as to the distance in which a train made up as this one was could be stopped, having Westinghouse air brakes applied throughout its length and with engine reversed.

No statute was violated by the company. A jury would not be authorized to find that the agents of the company failed to do all they could to stop after they saw the automobile had passed the bus to cross the track. But the question of reasonable signals and reasonable speed in crossing a much used street in a populous part of a large city remains. Was it reasonable care to blow the customary crossing signals so "calmly" that only one person among the public intended to be notified of the train's approach heard them? What was the speed of the train? And was it a prudent speed under all the circumstances that then and there existed, including the circumstances that the train was an extra, not on any usual schedule, and the crossing a much used but an unguarded one? These questions are fit to be answered by a jury.

We do not think the negligence of Miss Lowry is so clearly the sole proximate cause of her injury as to make immaterial the negligence, if any is found, of the company. Very probably she knew no train was due. The halted bus may have meant to her a stop for passengers rather than for a train. As the fireman could not see her till she got to the bus, so she could not see the train. She had no view of it while alongside of the bus. After clearing it the front of her car was only a very few feet from the track. If she looked then she may have thought it safer to go across than to risk stopping on the track. We are not arguing that she was without negligence, but only that she did not necessarily proceed recklessly into an evident danger, so to make her negligence the sole proximate cause of her injury. Both briefs cite and quote from the case of Anderson v. Crawford, 111 Fla. 381, 385, 149 So. 656, where a unanimous court dealt with a similar case and clearly stated the Florida law about as we have stated it. The company cites a later case of Loftin v. McGregor, 152 Fla. 813, 14 So.2d 574, 575, also similar to this, in which a closely divided court held the verdict ought to have been directed for the railroad company. Much authority was cited therein to the point that "When only one conclusion can be drawn from the admitted facts" the question is one of law for the court. That the admitted facts showed no liability was hardly discussed at all, and the Florida cases were not ad-

verted to. The only authority cited was Bradley v. Missouri Pac. R. Co., 8 Cir., 288 F. 484, where the court at great length discussed what was "contributory negligence", not what was sole negligence. That case had been submitted to the jury under the Arkansas statute similar to that of Florida, and their verdict was upheld. There was no ruling save that the submission was proper. It is no authority at all that there should not be a submission to the jury in case of contributory negligence. We cannot regard Loftin v. McGregor, supra, as overruling previous Florida cases, or unsettling Florida law on the questions before us.

▆▆▆ Whether a verdict should be directed in a federal court is a matter of federal law, having to do with the right of jury trial under the Constitution of the United States. As to negligence the federal law was stated in Grand Trunk Ry. Co. v. Ives, 144 U.S. at page 417, 12 S.Ct. at page 683, 36 L.Ed. 485, thus: "The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court (citing cases)." Under this rule, invoked by the railroad company here by removing the case to the federal court, we think there was matter, as above pointed out, for a jury to decide. The verdict ought not to have been directed.

Judgment reversed.

HUTCHESON, Circuit Judge (concurring specially).

Under the undisputed evidence, the negligence of Miss Lowry was so clear and so great as almost to require an instruction that it was the sole proximate cause of the injury. It was, however, not quite sufficient since there was some evidence from which it might be found that the negligence of defendant, though slight in comparison with hers, contributed to her injury. In these circumstances, in accordance with settled law,[1] the verdict should not have been directed for defendant, but the case should have gone to the jury under appropriate instructions, including an instruction that plaintiff was guilty of contributory negligence as matter of law. I, therefore, concur in the reversal.

---

[1] Stringfellow v. Atlantic Coast Line, 5 Cir., 64 F.2d 173, Id., 290 U.S. 322, 54 S.Ct. 175, 78 L.Ed. 339; Id., 5 Cir., 67 F.2d 1012.