### ATLANTIC COAST LINE R. CO. v. HADLOCK et al.

#### No. 12592.

United States Court of Appeals
Fifth Circuit.

Jan. 10, 1950.

Rehearing Denied March 2, 1950.

1. Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Dunne v. United States, 8 Cir., 138 F.2d 137.

edge of the incorporated town of Newberry in Florida, collided with the automobile of appellee Hadlock which was approaching the tracks on U. S. Highway 41. Hadlock and his driver, appellee Owens, were severely injured and the automobile ruined. Their two suits for damages were consolidated for trial, and by stipulation are also consolidated in this appeal. The jury found verdicts for reduced damages, finding in answer to special questions that the train was operated in a negligent manner, this negligence contributing directly to the injury; that the driver of the automobile was also neligent in its operation, his negligence contributing directly to the injury; and that the proportion of the negligence was 80 percent to the driver and 20 percent to the defendant. The damages were reduced accordingly. Errors specified on appeal are the refusal of the court to instruct a verdict for the defendant; the refusal of a new trial; and the admission of evidence of other accidents at the crossing.

■■ 1. The refusal of a new trial is not reviewable, the grant thereof being discretionary, and no special circumstances appearing to take this case out of the rule.

2. Towards the close of the trial a witness was asked by plaintiffs' counsel if there had been within two years other accidents at this crossing involving locomotives and automobiles, an objection of irrelevance being overruled. The question was answered yes, but was not followed up. On cross-examination defendant's counsel asked about details, but the only instance definitely remembered by the witness was when a man named Rush drove across in front of the engine which knocked the rear bumper off his car. There was some joking about Rush rushing, and not rushing fast enough. No further reference appears to have been made to this evidence by court or counsel.

■■ The complaints alleged this crossing to be a dangerous crossing, and so known to the defendant, especially as to trains approaching it from the east, as this train was, because of obstructions which made it difficult for a motorist to see or hear a train, and because of a dirt road running eastward near the track so that one

John G. Baker, Orlando, Fla., LeRoy B. Giles, Orlando, Fla., Charles Cook Howell, Wilmington, North Carolina, for appellant.

Clark W. Jennings, Orlando, Fla., for appellees.

Before HOLMES, WALLER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

A train of appellant Atlantic Coast Line R. Co., shortly after midnight running through the railroad yard limits and in the

on the highway at night would easily mistake the light of a train for the light of an automobile on the dirt road; and that the rails at the crossing were difficult to see at night. There is authority that when a place or instrumentality for the safety of which the defendant is responsible has been involved in other accidents within a recent period under similar circumstances the proof may be made for the limited purposes of showing that the place or instrumentality was in fact a source of danger, and that the defendant knew it. It is, however, likely to lead to collateral issues as to who was to blame in the other instances, and to afford more confusion than light, so that the matter rests largely in the discretion of the trial judge. 20 Am.Jur., Evidence, Sect. 304; 38 Am.Jur., Negligence, Sect. 314. In our recent case of Lowry v. Seaboard Air Line R. Co., 5 Cir., 171 F.2d 625, we upheld the rejection of such evidence, especially since there no defect was claimed in the construction of the crossing involved. In the present case there was a claim that the crossing itself was invisible at night, and that the crossing sign required by statute had no reflector to call attention to it at night. We cannot say the trial judge abused his discretion in permitting an enquiry as to other accidents there, but it developed that there was little or nothing to the enquiry. No night accidents appeared, and for lack of any similarity proven the Court very likely would have excluded the evidence had he been asked to. We find no reversible error here.

3. The gravamen of the case is on the motion for instructed verdict. Appellant contends that since the automobile struck the side of the engine at a point from eight feet to twenty feet from its front, according to different witnesses, the case is one of running into a train already occupying the crossing, for which the automobile driver has often been held solely to blame. We do not agree. The evidence would au-

thorize the jury to conclude that car and engine were each approaching the crossing at a speed of 25 miles or more per hour, neither being actually aware of the presence and intention to cross of the other because of obstructions by buildings and trees between them till within a few feet of each other and too late to stop. It was a matter of only a half second whether the car or engine would get on the crossing first,—whether the engine would strike the side of the car or the car the side of the engine. The enquiry for fault is not to be settled so simply. With both approaching it too fast, the law would award no absolute priority to the one arriving first.*

■ Nor can it be said as a matter of law that there was no fault in defendant in the construction of its crossing and the operation of its engine, or that the faulty driving of the automobile was the sole cause of the collision. As to the crossing, the defendant was not responsible for the houses and trees not on its right of way which obstructed the view of each other of a train coming from the east and an automobile coming from the south, nor for the dirt road paralleling the railroad on its south side eastward. But the crossing itself was so level and smooth that *at night,* with the automobile headlight not showing the track to right and left, and with the rails across the highway even with the paving so that they did not show, a stranger on the highway could not well see there was a crossing. This rendered more important other notice. The statutes of Florida, F.S.A. Sects. 320.45, 320.46, and 351.03 provide for railway crossing signs. ·The first two sections relate to crossings designated as dangerous by the State road department. Sect. 320.45 requires the motor operator to stop not less than ten feet from the nearest rail, and to look in both directions and listen for the approach of a locomotive or train. The next section re-

* We have examined carefully the Florida cases cited in the dissenting opinion and think them all readily distinguishable from this case in their circumstances. Indeed, in Seaboard Airlines R. Co. v. Boles, 160 Fla. 910, 37 So.2d 578,

where the driver of the vehicle knew he was approaching the crossing and failed to take proper precautions, the court ordered that the damages be shared half and half. The jury here awarded only one-fifth damages.

107

quires the railroad company at such a grade crossing to place on each side of its track, to the right of the highway and 250 feet from the crossing, a large sign with black letters on a white background, "Stop—Railroad Crossing—Florida Law", equipped with a mirror reflector for night use of such size, color and description as may be approved by the State road department, to reflect the motor vehicle's headlight. Such a sign was erected 250 feet from this crossing on the right of the highway but 15 feet away from the edge of it, and without any mirror reflector. The driver of this automobile did not see the sign or know he was approaching a railway crossing. The third cited section, 351.03, requires the railroad company at other highway crossings to erect a sign, "Look out for the cars". There was no such sign at this crossing, which evidently was treated as a dangerous one. The defendant argues that the proviso at the end of Sect. 320.45, "Provided, however, that the requirements of this section shall not extend to railroad tracks within the limits of incorporated cities or towns * * *" excuses it from having either sign or reflector at this crossing, since it is within the limits of an incorporated town, and since Sect. 320.46 applies only to crossings falling under Sect. 320.45. We do not so understand the proviso. The "requirements of this Section" do not indeed apply to city and town crossings, but they relate only to the operator of the motor vehicle. No requirement is therein made of the railroad company; but its requirements follow in the next section without any such proviso. The jury might well conclude that the failure to have the reflector on the sign to draw attention to it at night was negligence contributing to the accident.

■ But section 320.46 has a proviso at its end, "Provided further, that where railroad warning signs have already been placed, or shall hereafter be placed, at any railroad crossing by the state road department, said railroad companies shall not be required to erect or maintain additional signs or reflectors at such crossings." We held in Ouzts v. Powell, 5 Cir., 125 F.2d

768, where it was stipulated that the sign at a crossing had been erected by the State Road Department, that no sign was required to be erected by the railroad company and that the company was not responsible for any insufficiency in the sign. The record in the present case contains no suggestion that the sign at this crossing was erected by the State Road Department, and the appellant has made no such contention either in its brief or oral argument. Indeed the brief, which quotes the section, omits this proviso, evidently because it was not considered pertinent to the case. It quotes and relies on only the proviso to section 320.45 just above discussed. The body of section 340.46 requires that *the railroad company* shall place and maintain the sign with mirror reflectors to reflect the motor vehicles headlight at night. The proviso operates as an exception, and the burden is upon the railroad company to prove the exception. It has not even raised the contention, though the proof was made by several witnesses that there were no reflectors. We cannot *suppose* the State Road Department had erected the signs at this crossing.

Again the speed of the train is in question. One of the train crew estimates it as low as 12 miles per hour. Others place it as high as 25 miles. Two experienced ex-engineers of this very railroad company, on the basis as proved of a level track with a stated kind of locomotive and a stated number of cars, with air brakes applied in emergency at the crossing and the train running 400 feet before stopping, testified that the speed must have been in excess of 30 miles per hour. The jury might consider this an imprudent speed at which to approach an obstructed, unguarded crossing in the limits of a town and across a much travelled highway such as Highway 41 is shown to be. The defendant itself had prescribed a speed limit here of 15 miles, according to the fireman.

■ Similarly there is some excuse for the conduct of this driver. He had travelled the highway twice before and knew there was a railroad to be crossed near this town, but he did not know he was approaching it. He testifies he was looking

ahead, did not see the crossing sign, did not see the rails across the pavement, (several witnesses testify they are hardly visible at night), did see the side road to his right and a dim light down it, which he took to be a light on a pole, but now thinks it must have been the engine headlight. He heard no whistle, though several witnesses testify one was blown. All this occurred in a short space of 140 feet after passing the buildings along the highway. The enginemen say the headlight was burning brightly; but they also say they were in yard limits, and their rules require dimmed headlights there lest they blind others, and that a dimmed headlight is really dim. The jury might think the car driver was negligent but not reckless or the sole author of the accident. They did charge him with four-fifths of the fault. We discussed carefully the application of the other Florida statutes to a similar accident in Lowry v. Seaboard Air Line R. Co., 5 Cir., 171 F.2d 625, and need not repeat that discussion. We held that case to be one for the jury, and we hold the same here.

Judgment affirmed.

WALLER, Circuit Judge (dissenting).

I am unable to find any proof of negligence on the part of the Railroad in this case. All of the positive testimony on the subject of blowing the whistle and ringing the bell is to the effect that they were appropriately sounded. Against this is merely the negative testimony of Plaintiffs and one or two other witnesses that they did not hear any bell or whistle.

Not one of such witnesses who was in position to hear the bell or whistle had his attention directed thereto, and such testimony must give way to the positive testimony of those who did observe and hear.

In Seaboard Air Line R. Co. v. Myrick, 91 Fla. 918, 109 So. 193, 195, the Supreme Court of Florida said:

"It is not alone sufficient for the injured plaintiff to say that he 'did not see' the approaching train, nor hear any whistle or bell or noise of its approach, in order to overcome positive evidence that all ordinary warnings were given of the train's approach. When negative testimony is relied upon to contradict positive evidence, it should appear that the negative statements were made by persons whose attention was directed to the fact that they were looking, watching, and listening for the fact."

See also decision by this Court in Van Allen et al. v. Atlantic Coast Line R. Co., 5 Cir., 109 F.2d 780, 782, where our Court, in speaking of negative testimony as to the ringing of the bell or sounding of the whistle, said:

"Such evidence will not make an issue in Florida against the positive testimony that the signals were given. Florida East Coast R. Co. v. Davis, 96 Fla. 171, 117 So. 842; Southern R. Co. v. Mann, 91 Fla. 948, 108 So. 889; Seaboard Air Line R. Co. v. Myrick, 91 Fla. 918, 109 So. 193."

The only other possible ground for any finding of negligence by the Defendant is based upon the assumed speed of the locomotive in the calculation of two witnesses that if the train ran some 400 feet [1] after being struck by the car it must have been going thirty or thirty-five miles per hour at the crossing. The testimony of the eye witnesses is that the train was traveling at a speed of from twelve to twenty miles per hour. At this sparsely settled point in this small village,[2] thirty-five miles per hour would not be a negligent rate of speed, but even if the contrary were true and even if the speed had been thirty or thirty-five miles per hour, it would not have been the proximate cause of the injury since the train did not run into the automobile but the automobile ran into the side of the locomotive, hitting it considerably back of

1. There is testimony that the train ran some 400 feet after the accident, but it seems to be undisputed that after the accident and after the train had stopped, the highway was still blocked by the sixth and seventh car of this seven-car train, which indicates that the train traveled a lesser distance than 400 feet.

2. The population of Newberry in 1945, the last State census, was 752, and the accident did not occur in the main portion of the village. See Plaintiffs' Exhibit 7.

the front end—twenty-five feet, according to the engineer.

I think the proximate and sole cause of the injury, under the Florida decisions, was the negligence of the driver of the automobile. A train cannot dodge an automobile. It cannot stop with the ease and within the distance that an automobile can. It is not the law in Florida that a plaintiff who, without looking and listening, drives his car into a train, proximately causing the injury, can recover damages against the railroad.

Before undertaking to point out the pertinent decisions of Florida as to liability for crossing accidents I wish to mention certain factual aspects of this case that appear to be material and that have influenced my views.

The undisputed testimony is that the automobile hit the side of the locomotive and never got upon the railroad track.[3] The only testimony of the Plaintiffs on this feature was that of Lawrence Owens, the driver of the automobile. The Plaintiff, Hadlock, testified that he was asleep and knew nothing about the accident. Owens testified (R. 63):

"Q. You didn't drive in front of it, did you?

"A. I didn't.

"Q. So you must have hit it. Didn't you?

"A. The front end of the Buick went into the side of the locomotive."

It is undisputed that the Buick hit the locomotive back of its front, and broke its eccentric rod at the point of impact. The engineer testified that this point was twenty-five feet from the front of the locomotive. No eye witness puts the speed of the train in excess of twenty miles an hour. The Plaintiff, the driver of the car, testified that he was going twenty-five miles an hour and that he was within fifteen feet of the train before he saw it. There is no contention

that he stopped or that he looked or that he listened for the train. True, he said he did not realize he was approaching the crossing. Nevertheless, Plaintiffs' photographs,[4] in evidence, show clearly three crossing signals facing Plaintiffs as they approached on the south side of the track. Section 320.46, Florida Statutes Annotated, relieves the Railroad from the necessity of equipping its crossing signs with night reflectors if warning signs had been placed there by the State Road Department. The Plaintiffs by their own photographs (Exhibits 4 and 6) show three crossing signs facing south on the highway. The majority opinion states that "The jury might well conclude that the failure to have the reflector on the sign to draw attention to it at night was negligence contributing to the accident." This statement seems to ignore the last part of Section 320.46, F.S.A., which provides:

"* * * where railroad warning signs have already been placed, or shall hereafter be placed, at any railroad crossing by the state road department, said railroad companies shall not be required to erect or maintain additional signs or reflectors at such crossings." (Emphasis added.)

In the case of Ouzts v. Powell, 5 Cir., arising in Florida, 125 F.2d 768, 769, in discussing the effect of the foregoing section of the Florida Statutes, it was said:

"* * * but since the Department had placed and maintained its own warning signs at this crossing, the railroad company had no duty to place any. If the signs were insufficient it was not the fault of the railroad company. No other negligence appears. The train had a right to cross the highway, and having reached the crossing first was, so far as appears, proceeding in a cautious and proper way."

That statement is clearly in accord with the law of Florida as construed by its own courts.

Therefore, the Plaintiffs hit the train before crossing any tracks.

---

3. The Plaintiffs were traveling north. There were two tracks—the main track and a passing, or switching, track. The main track was on the south and the train was traveling on the main track.

4. Plaintiffs' Photographic Exhibits Nos. 4 and 6 show three signs clearly visible to Plaintiffs who were approaching from the south and facing the signs.

If the State Road Department had placed its railroad warning signs at this particular crossing there would have been no statutory duty on the part of the Railroad to equip its signboards with mirror reflectors and no inference of negligence on the part of the Railroad can be drawn from the failure to have reflectors on its signs in the absence of proof by Plaintiffs that the State Road Department had erected no signs at the crossing. And the same reasoning seems applicable to Sec. 351.03, Florida Statutes Annotated, which provides that:

"Every railroad company, whenever its track crosses a highway, shall put up large sign boards at or near said crossing with the following inscription in large letters on both sides of the boards: 'Look out for the cars!' * * * This requirement for posting signs shall not apply to railroad crossings * * * as required by § 320.46."

It is not shown that the railroad signs were not erected at the crossing as required by Section 320.46.

This accident did not occur in the busy part of a large municipality. Newberry had a population of only 752 at the last State census in 1945, and Plaintiff Owens testified that he was on the outskirts of Newberry where the accident occurred (R. 62):

"Q. That was way out on the edge of Newberry, wasn't it—I mean there's nothing beyond that except a few scattered little shanties, before that—isn't that true?

"A. A few scattered houses.

"Q. Yes. It's on the northern outskirts; is that not true?

"A. Yes."

Therefore, we have a case of a crossing on the outskirts of a village of 752 people at 1 o'clock in the morning; a crossing that was level and smooth; that had three crossing signs facing the Plaintiffs; a driver who admittedly did not stop, or look, or listen; a driver who admitted he had crossed the track twice before within a month; who gave no reason for not seeing the signs placed there by the Defendant and/or the State Road Department and

who ran his car into the side of the locomotive.

It is true, that although none of the eye witnesses placed the speed of the train in excess of twenty miles an hour, two former railroad engineers calculated, from the distance that the train ran after the collision, the length and weight thereof, it must have been going thirty to thirty-five miles an hour at the crossing. It ought to be remembered that the accident occurred on the opposite side of the engine from that of the engineer, who did not see the car nor the accident, and it is not clear at what point he applied the brakes to stop the train. But even if it were traveling thirty to thirty-five miles an hour, this speed was neither excessive nor the proximate cause of the injury since the train did not run into the automobile.

In Atlantic Coast Line R. Co. v. Timmons, 160 Fla. 754, 36 So.2d 430, 431, the Supreme Court of Florida, on July 30, 1948, said:

"The railroad has a right to assume that one crossing its tracks will at least look to see if there is an approaching train, and if so, he will not plunge into its pathway. * * *

" * * * Some jurisdictions require that one stop, look and listen, regardless of how clear the track is in either direction. Other courts require the traveler to look and listen, the duty to stop, depending on the circumstances revealed by looking and listening. [Citing cases.] We approve the latter rule in this State and when, as here, it is conclusively shown that the plaintiff did not look or listen, that there was no obstruction whatever to the vision, that the accident took place in a rural community where looking or listening would have avoided it, he is guilty of negligence which was the sole proximate cause of his injury and cannot recover."

In the instant case the Plaintiffs had 140 feet of clear view of the track which the driver knew existed and also had the three crossing signs to refresh his recollection, but he neither looked at them nor did he listen.

In Seaboard Air Line R. Co. v. Boles, 160 Fla. 910, 37 So.2d 578, decided by the Supreme Court of Florida on October 26, 1948, approximately three months after the Timmons case, the Court again said:

"In Atlantic Coast Line Railroad Company v. Timmons [160] Fla. [754], 36 So. 2d 430, this Court defined the standard of prudence required of one approaching a grade crossing like that involved in this case. He is first required to look and listen and if the way is clear he may proceed. Circumstances may require him to stop, look and listen."

In Brown v. Loftin et al., 154 Fla. 621, 18 So.2d 540, the first headnote is:

"In action against railroad for death of passenger in automobile, declaration which disclosed that automobile struck seventeenth car of freight train which was crossing highway failed to state a cause of action, notwithstanding allegations of absence of signboards, flashlight signals, or other warning devices."

In Bray v. Atlantic Coast Line R. Co., 153 Fla. 619, 15 So.2d 417, the first headnote is:

"Where motorist alleged he was not familiar with highway where it intersected railroad track and blending of colors of highway and cars of railroad then obstructing crossing prevented driver from seeing freight train in time to avoid collision, driver was as a matter of law contributorily negligent precluding recovery."

In Kimball v. Atlantic Coast Line R. Co., 132 Fla. 235, 181 So. 533, the headnote is as follows:

"A petition seeking damages for injuries suffered by truck driver in collision with train standing stationary on crossing at night was demurrable in absence of allegations that truck driver did not see and could not have seen the train, since otherwise driver's recovery would be barred by contributory negligence."

Another significant statement in the body of the opinion was:

"The train remaining stationary on the crossing, ipso facto, could not be the proximate cause of the injury, but the proximate cause was the driving of the car into the freight train while it was standing on the crossing, or the plaintiff's own negligence. If the visibility was poor, it was the duty of the plaintiff to have driven the truck at a low rate of speed so that on short notice the emergency brakes could be applied and the truck stopped."

In Clark v. Atlantic Coast Line R. Co., 141 Fla. 155, 192 So. 621, 622, the Florida Supreme Court again said:

"A railroad company is entitled to assume that reasonable care will be exercised by automobile travelers on the highway, and that a motorist will adopt such a rate of speed and be as vigilant to avoid collisions at crossings as the conditions warrant."

Denton v. Atlanta & St. Andrews Bay R. Co., 141 Fla. 153, 192 So. 624, was another denial of the right of a motorist to collect from a railroad for a collision where the automobile ran into the train. Numerous cases are cited therein.

In Cline v. Powell, 141 Fla. 119, 192 So. 628, 631, the Florida Supreme Court again denied recovery in a crossing accident where the motorist drove his car into a stationary train. Numerous Florida cases are there cited but the following statement is realistic and accurate:

"The operation of railroad trains is authorized by law. Such a train must run on a track; and even if the track is not obvious to one approaching it at a grade crossing, certainly a train is so obvious and may be seen in time to avoid accidents even at night by the use of lights required by law to be used on motorcycles."

I deem it unnecessary to quote further from decisions of the Florida courts, but I do wish to call the court's attention to two decisions from this Court. One, Van Allen et al. v. Atlantic Coast Line R. Co., supra, denied recovery to a driver of a motor vehicle who had driven upon a railroad track without stopping, looking, or taking any precautions against being struck by the train, saying [109 F.2d 782]:

"We may assume that this [30 miles an hour], rather than 20 miles, was its speed and still there would be nothing to rest a verdict on, both because it is not shown that this speed was negligent and particu-

larly because it is not shown by any evidence to have been or have had any relation to, the proximate cause of the injury. Upon the undisputed evidence, the proximate cause was the driving on to the tracks without stopping, looking or making any effort whatever to ascertain whether a train was approaching. The Supreme Court of Florida has in repeated decisions, held that such conduct is the sole proximate cause of an injury, barring recovery alike of driver and guest. [Citing numerous cases.]

"* * * We have here an injury solely caused by the reckless conduct of the driver of an automobile in going on to a track with full knowledge of its existence, without taking any precautions to look out for an oncoming train."

One of the later opinions of this Court on a case from Florida involving the driving of an automobile into a moving train is that of Ouzts v. Powell, supra [125 F.2d 769], wherein it was said:

"* * * The train had a right to cross the highway, and having reached the crossing first was, so far as appears, proceeding in a cautious and proper way. That the engine should have left smoke behind it cannot be held negligence. The statute of Florida (Comp.Gen.Laws 1927, § 7052 [F.S.A. § 768.06]) diminishing instead of defeating recovery when both the injured person and the railroad company are at fault has no application, because no fault appears on the part of the railroad company."

The lower Court, over the strenuous objection of counsel for the Defendant, permitted evidence to go to the jury as to other accidents or near accidents at this same crossing within two years prior to the accident in question. I think this was highly prejudicial and reversible error.

In Lowry v. Seaboard Airline R. Co., 5 Cir., 171 F.2d 625, 626, this Court, speaking through Judge Sibley, said:

"Plaintiff offered to prove that at the same crossing there had been a similar collision between a train and an automobile fifteen months previously, and another three years before that, to show the dangerous character of the crossing. The evidence was properly rejected as irrelevant. * * * If evidence be admitted of a prior collision the company would have the right to show, if it could, that its servants were not to blame and three cases would have to be tried instead of one. Fixing the blame in another case would not fix it in this one."

See also Loftin v. McGregor, 152 Fla. 813, 14 So.2d 574.

It seems to me the admission of this evidence over the objections of the Defendant constituted reversible error.

On Motion for Rehearing.

PER CURIAM.

The very earnest motion for rehearing of the appellant presents nothing new except that for the first time the proviso in F.S.A. § 320.46 is urged as relieving the railroad company from responsibility for the absence from the crossing signs of reflectors for night warning in that the trial judge held the section to be inapplicable and "there was a likely valid ground for his ruling, namely, that counsel for the plaintiffs admitted in his conference with the court (R. 296) that the state road department had erected a sign at the crossing", and that the court's charge shows that this was the theory on which the case was tried. If the sign was erected by the state road department the railroad company is not responsible for its deficiency as we held in Ouzts v. Powell, 5 Cir., 125 F.2d 768. But we find in the record no such admission by counsel. In the charge of the court Section 320.46 or its proviso is not mentioned. The court tells the jury that the primary question is whether the greater weight of the evidence convinces them that the defendant was negligent in the operation of its train and that negligence was a proximate cause of the accident. There was likewise instruction as to the negligence of the driver of the car, and if it was the sole cause of the injury recovery was barred, but if the negligence of both contributed proximately to the injury a recovery proportionally diminished would be proper. There was also a charge that "You cannot predicate any negligence on the part of the

railroad company by any failure to provide a watchman, flagman, signal lights, reflector lights, gates or alarms at the crossing. The failure to provide any such warning signals would not of itself constitute negligence, but the test is whether the train was negligently operated taking into consideration all the surrounding circumstances including the lack of guards, flagman, warning signals, etc." The jury were told also to consider the absence of such in determining whether the car driver was negligent in a way that contributed to cause the accident. The charge was not objected to and we are not passing on its correctness. It does tend to show that the judge did not consider section 320.46 as applicable. It hardly shows that plaintiffs' counsel made any admission about it.

If however we take the charge as correct, and that the absence of reflectors is not in itself a ground of negligence in the railroad company but is to be considered only as a part of the situation at the crossing of which the company was aware, and as throwing light on the conduct of the driver of the car in approaching the crossing, we are of opinion that the issues were for the jury as to negligence and as to proximate cause. Among the great mass of crossing cases cited as to the contrary, both from the Supreme Court of Florida, and from this court in cases from Florida, no one can be put forward as controlling this. Many involved collisions in daylight when the driver knew he was approaching the crossing and took an evident risk, or without excuse failed to use his senses. In others, where the collision occurred at night, in fog, or smoke, the driver ran into a train already on the crossing, because the driver was going at such a speed that he could not stop within the range of his vision, and knew he could not. Thus in our case of Good v. Atlantic Coast Line R. Co., 5 Cir., 142 F.2d 46, Good was driving on a foggy night and "was unable to see more than 15 to 18 feet in front of the car. He was driving at a speed of approximately 20 miles per hour and could not stop within the range of his vision. * * * Good was well acquainted with the crossing, having passed over it many times in going to * * * his places of business". The train was standing across the crossing. Good could not recover. In Van Allen v. Atlantic Coast Line R. Co., 5 Cir., 109 F.2d 780, 782, the accident was at night. The car driver was familiar with the crossing but inattentive to it. He could have seen the train had he looked. The court said: "Upon the undisputed evidence, the proximate cause was the driving onto the tracks without stopping, looking or making any effort whatever, to ascertain if a train was approaching. * * * We have here an injury solely caused by the reckless conduct of the driver of an automobile going onto a track with full knowledge of its existence, without taking any precautions to look out for an oncoming train." The cases from the Florida court are similar.

Here, under the evidence favorable to the plaintiffs, the night was dark, but clear; the driver was a stranger in the neighborhood, but had passed along the highway a few weeks preceding twice in daylight and knew there was a railroad to be crossed, but did not know he was near the crossing on this night. He could not see the crossing itself because the rails were flush with the pavement. He heard no train signals if given, saw a light down a road to his right but did not think it was from a train, and looking ahead did not know he was near a railroad track till too late. His failure to see an unilluminated crossing sign as he passed it, and perhaps too much speed, is the fault chargeable to him. The jury could well conclude this negligence was not the sole proximate cause of the accident if the train was also at fault in approaching the crossing. The train crew knew the crossing was there, and its condition. They did not have to run fast, but the contrary, for they were in yard limits where the railroad rules required that speed be such that they could stop in half the range of vision, and a railroad station and the crossing of another railroad track was only 125 or 150 yards ahead. The company, though not charged with putting night reflectors on the crossing signs, knew there were none, and that since the rails were flush with

the pavement it was difficult for travellers to see the crossing at night, and they were liable not to take precautions because they did not perceive there was a crossing there. The train speed, on conflicting evidence, might be taken at 30 miles per hour, half a mile per minute, about 44 feet per second. The fireman, on the side from which the car was approaching, saw its light, but assumed at first it would stop, but when he saw it was not going to, he says everything happened like a snap of the fingers. He testifies positively that under the rules of the railroad "That highway crossing has a speed limit of 15 miles per hour over it". and again he says, "Fifteen miles over the crossing". Q. "Over that crossing?" A. "The highway crossing at Newberry." He says they were running at that speed there that night, but his statement that things happened like the snap of the fingers, and the evidence as to how far the train ran before it could be stopped and of the speed indicated thereby, discredit his estimate of his speed. Without further details, we hold that the negligence of each party was for the jury; as also whether there was concurring contributing negligence, or whether that of the driver was the sole proximate cause of the injury.

Motion denied.

WALLER, Circuit Judge, dissenting.