231 F.2d 917
 GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Ltd., Hebert Brothers and Wesley Williams, Appellants,
v.
Irene Beth ZAPEL, Appellee.
GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Ltd., Appellant,
v.
Gwyndall FLOWERS, Appellee.
 No. 15764.
 United States Court of Appeals Fifth Circuit.
 March 16, 1956.
 Rehearing Denied April 19, 1956.
 
 A. G. Seale, Huckabay, Seale, Kelton & Hayes, Baton Rouge, La., for appellants.
 Sam J. D'Amico, Steve A. Alford, Jr., Baton Rouge, La., for appellees.
 Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.
 CAMERON, Circuit Judge.
 
 
 1
 Appellees, Irene Zapel and Gwyndall Flowers, as plaintiffs below, recovered judgments for personal injuries received in an automobile-truck collision against appellants, defendants below, being the truck driver, Wesley Williams, his employer, Hebert Brothers, and their insurance carrier. The accident happened about 3:00 p. m., May 20, 1955 on Highway 30 as the Williams truck and the Zapel car met about the "peak" of a forty-five degree curve. The two cases were consolidated for trial by a jury and resulted in a verdict of $6,000 in favor of Miss Zapel and $7,000 in favor of Miss Flowers. The chief error argued is based upon the assertion of appellants that the Court below should have directed a verdict in their favor because they claim that there was not sufficient evidence of negligence to warrant submission of this issue to the jury; and that the evidence showed, as a matter of law, that the injuries resulted from negligence of Miss Zapel which contributed thereto. These alleged errors will be discussed as the facts are stated.
 
 
 2
 Plaintiffs approached the curve, following the short radius, in a 1953 model Ford Tudor Sedan. Defendant, Wesley Williams, approached the curve from the opposite direction, following the long radius and driving a Chevrolet truck-tractor and semi-trailer heavily loaded with pipe. It was an unusually long truck with an unusually heavy load (24 tons), and a special permit was required for its operation. The wheel-base of the tractor portion was thirteen feet four inches, and the distance from the center of the rear wheels of the tractor to the center of the space between the tandem wheels of the trailer was 25.65 feet. The entire length from the front of the truck to the rear of the load was 63 feet.
 
 
 3
 The width of concrete Highway 30 on the tangents approaching the curve was twenty feet, and it had been poured in two segments ten feet wide, with a longitudinal space between them known as an expansion joint. This space was kept well filled and even to overflowing with asphalt which, according to the photographs, furnished a clear black line at the center of this road on the straight portions. The same space between the concrete pourings and the same asphalt line followed around the curve. But in the portion of the curve where the accident occurred an additional five feet of concrete had been hand-poured on the inside or the short radius of the curve, so that the entire width of the road was twenty-five feet, ten feet being on the outside of the asphalt line and fifteen feet being on the inside. Trooper Gomez, who made the investigation for the Highway Patrol, stated[1] that a black line was provided along the asphalt filling by state officials, and one of the defense witnesses pointed out on the photograph in evidence an obscure white line painted on the pavement adjacent to the asphalt line and on the inside thereof. Most of the witnesses who testified, including Trooper Bridges, apparently recognized this black line as the marker which was generally accepted as that provided by state officials as the division point between the two lanes of traffic.
 
 
 4
 Plaintiffs testified that Miss Zapel was driving at a speed of about 15 miles per hour near her edge of the road, when the oncoming truck was seen before it entered the other end of the curve. According to them, the truck-trailer was being driven in the middle of the highway and at a very rapid rate of speed, ranging up to 45 miles an hour. They testified that Miss Zapel tried to pull far enough over to her right to avoid being struck, but that she was unable to do this and that the left front portion of her car was struck by the left rear tandem wheels of the trailer.
 
 
 5
 Defendant, Williams, and one witness who was riding in the cab with him agreed with plaintiffs as to the speed of their car and as to their position well on their side of the road when they passed the cab of the truck. According to defendant Williams, he was operating the truck in second gear at a speed of about 10 to 15 miles an hour — admitting, however, that he had been making a speed of 30 miles a short distance back — and knew nothing of an impending accident until he felt the impact, whereupon he applied his brakes and stopped within a distance of four or five feet.
 
 
 6
 This defendant testified that, when his truck was brought to a stop, the front wheels of the tractor portion were substantially against the outside edge of the road and that the rear tandem wheels of the trailer were about on the black line. One of his witnesses testified that the front of the tractor had its left wheel only six inches from this asphalt line and that the rear wheel of the tractor portion was on the asphalt line.
 
 
 7
 According to one of defendants' witnesses, the car and the truck were one and one-half feet apart when they came to rest and, according to another defense witness, they were far enough separated that the ambulance could probably have been driven between them.
 
 
 8
 Trooper Gomez was introduced by plaintiff and it was shown that he was probably the first outsider to arrive at the scene of the accident. According to him, the left rear tandem wheels of the trailer were slightly more than two feet over on the plaintiffs' side of the black line, the Ford was standing with its left front about five feet away from the trailer and with the right rear wheel off of the pavement and with the car resting at an angle pointing towards the rear of the trailer. The left rear wheels of the trailer had advanced about four or five feet beyond the left front wheel of the Ford car and the dirt or debris, which he felt represented the point of accident, was about the same distance in advance of the left rear wheel of the trailer and on plaintiff's side of the black line.
 
 
 9
 Defendant introduced an engineer who made measurements and produced a drawing and testified as an expert that, if this truck should be driven with the rear tractor wheels against the outside of the edge of the pavement, the left rear wheel of the trailer would rest upon the black line. Plaintiffs introduced Highway Trooper Bridges who had gone with defendant, Williams, driving the same truck with identical load to conduct an experiment with the view of determining exactly how much the trailer wheels would fail to follow in the tracks of the tractor wheels. He cautioned the defendant to drive with his truck wheels as close as possible to the outside edge of the curve. The truck was stopped at intervals of about ten feet, and in every instance it was found that the left rear wheels of the tractor drifted well across the black line and into the opposite lane as marked by it. The Court finally ruled this testimony out, but it tended to correspond with that given by the engineer who had made the measurements and computations for defendant.
 
 
 10
 Defendants produced a witness who was driving behind the plaintiffs and who testified that the Ford automobile was turned slightly into the truck just before the accident. This was denied by plaintiffs, both of whom testified that the trailer drifted so far into plaintiffs' lane of traffic that it struck the Ford car despite Miss Zapel's effort to pull as far as possible to her right.
 
 
 11
 This brief outline of the testimony is sufficient to show that a sharp issue was presented, both as to the true facts and as to reasonable deductions to be drawn from the testimony about them. If, as claimed by the plaintiffs, the truck was in the center of the highway as it entered the far end of the curve, its driver necessarily pulled it sharply away from plaintiffs before the point of impact, but did not succeed in getting the rear wheels of the trailer out of the path their automobile was necessarily taking. Moreover, the Louisiana statute required that he be on his half of the road when two hundred feet away.
 
 
 12
 From the testimony of plaintiffs and the photograph taken of the Ford car after the accident, showing its left front wheel with tire blown out and the wheel crushed in, it could be deduced that the left rear trailer wheels mounted the left front automobile wheel and that the entire rear of the trailer was thrown by the impact some distance towards its own lane. It could further be logically deduced that the Ford was forced backward as well as sideways by the impact, as it is hard to conceive that the heavily loaded truck could have been brought to a standstill within four or five feet from the point of impact, particularly considering the time it would have taken the driver of the truck to receive the impulse indicating that an accident had happened and to apply his brakes.
 
 
 13
 Trooper Gomez was the only witness asked concerning skidmarks and he finally stated that he was unable to recall whether there were any such marks or not. The impact is bound to have been extremely heavy to inflict the personal injuries received by the plaintiffs, to have caused the damage shown by the photograph to the front of the Ford, and to have "twisted" the truck in the vicinity of the rear tandem wheels. And the solution of the whole problem had to be reached in recognition of the duty resting upon appellants to handle the ponderous and unwieldly vehicle with the care reasonably commensurate with the danger inhering in its operation. In sum, it is difficult to reconstruct, from all of the evidence, just exactly what did happen, and the case presents a typical one for jury decision.
 
 
 14
 "`The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court (citing cases).'"
 
 
 15
 So said this Court in Lowry v. Seaboard Airline Railroad Co., 1948, 171 F.2d 625, 630, quoting from the Supreme Court's decision in Grand Trunk Railway Co. v. Ives, 144 U.S. 408, at 417, 12 S.Ct. 679, 36 L.Ed. 485.[2]
 
 
 16
 The remaining assignments of error do not deserve much discussion. The claim that the Court below interposed too often to ask questions or showed bias therein is wholly without foundation. Appellants attack the Court's actions with respect to the testimony of Trooper Bridges. Being well acquainted with defendant Williams, and interested in ascertaining whether these long loads could successfully negotiate that sharp a curve, he got with said defendant a few days after the accident to make a test run. Defendant was driving the same truck with identical load, and he drove the truck around this curve, keeping his tractor wheels as nearly as possible against the outside edge of the curve and stopping at ten foot intervals. In every instance it was found, as a matter of practice, that the left rear wheels of the trailer drifted quite a distance beyond the black line.
 
 
 17
 Appellants objected chiefly on the ground that the experiment was made when conditions were not the same as they were at the time of the accident. This turned out not to be true, and the Court heard the evidence. At the conclusion of the direct examination the Court, upon further objection, excluded the evidence.[3] Notwithstanding this exclusion, appellant took the witness and subjected him to an extensive cross-examination, trying to show bias and interest, so that the whole episode seemed to eventuate in favor of appellants rather than against them.
 
 
 18
 Finally, it is argued that the Court below erred in adding to certain instructions requested by appellants an explanation in the words set out in the margin.[4]
 
 
 19
 The Court had just read appellants' requested instruction given pursuant to Louisiana Statute[5] charging the jury that each vehicle was required to give to the other for at least two hundred feet before meeting, one-half of the highway, by which was meant one-half of the actual traveled portion of the highway, and that the jury should not construe the construction joint, in which certain asphaltic material had been deposited, as the center of the highway. The portion which was added was necessary to present the law as set forth in R.S. 48320, 27 LSA-R.S. c. 1, § 320, requiring vehicles to be driven to the right of the "central dividing curb, separation section, or line". Much of the evidence of both parties had dealt with this asphalt line including quite a bit elicited by appellants' questions; and there was credible evidence that it was maintained by the highway officials as the dividing line between the traffic lanes; and this explanation by the Court was necessary to relate that testimony to the Louisiana statute.
 
 
 20
 We hold that the case was one for jury decision and that it was fairly presented to the jury under proper instructions and that we are not warranted in disturbing the jury's verdict. The judgment entered thereon is, therefore,
 
 
 21
 Affirmed.
 
 
 22
 On Petition for Rehearing.
 
 
 23
 The petition for rehearing asserts that Wesley Williams was a party defendant to the Zapel suit but not to the Flowers suit. The petition states: "During oral argument before this Honorable Court inquiries were made as to whether or not Wesley Williams was a party defendant. We feel reasonably sure that the impression was left with the Court that in both instances Wesley Williams was a party defendant." The fact is that the question was asked during the argument and the parties agreed that Williams was a defendant in both cases.
 
 
 24
 The record reflects that, in each case, answer was filed on behalf of Wesley Williams as a defendant. The cases were consolidated for trial by agreement in the Court below, and were presented to this Court as one case.
 
 
 25
 In any event, the result reached in each case would be the same whether Williams was a defendant or not. The only point sought to be argued is that the testimony of Officer Bridges concerning tests made with Williams would be inadmissible in the Flowers case. The objection to that testimony when offered was on behalf of both plaintiffs, and no separate objection was made in connection with the Flowers claim. Moreover, as shown in the opinion, this evidence of Officer Bridges was excluded entirely in both cases. The petition for rehearing is without merit and is
 
 
 26
 Denied.
 
 
 
 Notes:
 
 
 [1]
 He testified, when asked if the black line was not just a construction joint, "I wouldn't say whether it was a construction joint I would say the black line that was supposed to represent the center line." At another point, he stated:
 "Judge, it was a black line that the Highway Department had marked that was supposed to indicate the center of the road. However, we found out later that the black mark there wasn't marking the center of the road. Actually it was more to the left than it was to the —
 "The Court: This black line that you are referring to was a black line put there by the Highway Department —
 "The Witness: To indicate the center of the highway."
 
 
 [2]
 And we drew upon a Supreme Court case and cited a number of others in announcing the same rule in Wright v. Paramount-Richards Theatres, Inc., 5 Cir., 1952, 198 F.2d 303, 307-308: "`The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. * * * It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'"
 
 
 [3]
 In view of the testimony given by Engineer Dupre, the fact that Williams was a defendant and that Officer Bridges was making the tests as a safety measure, it is difficult to perceive why this testimony was not admissible. We approved the admission of experimental evidence in Travelers' Ins. Co. v. Wilkes, 5 Cir., 1935, 76 F.2d 701, as did the Court of Appeals of Louisiana in Tassin v. New Orleans Public Service, 1932, 19 La.App. 456, 139 So. 695. And see generally Hopkins v. E. I. Du Pont de Nemours & Co., 3 Cir., 1952, 199 F.2d 930, and 20 Am.Jur. pp. 627, et seq., Evidence, Sections 755 et seq
 
 
 [4]
 "In this connection, and this is not part of the requested charges by the defendant, you are also instructed that if you find that the Louisiana Highway Department placed a line on the highway as a guide to traffic, separating the traffic lanes you may consider this fact in determining the issue of negligence which this case presents."
 It is doubtful if appellants made sufficient objection to this statement of the Court, merely asserting, "The defendant objects to the explanation given by the Court after having read to the jury charges numbers one, two and three * * *" Rule 51, Fed.Rules Civ.Proc., 28 U.S.C.A., requires that the party state "distinctly * * * the grounds of his objection." Employers Mutual Cas. Co. v. Johnson, 5 Cir., 1953, 201 F.2d 153, 155-156; American Fidelity & Cas. Co. v. Drexler, 5 Cir., 1955, 220 F.2d 930, 934. And see Mill Owners Mutual Fire Ins. Co. v. Kelly, 8 Cir., 1944, 141 F.2d 763, and B. & O. Railroad Co. v. Felgenhauer, 8 Cir., 1948, 168 F.2d 12.
 
 
 [5]
 R.S. 32:232, 18 LSA-R.S. c. 1, § 232