ALLEN, Judge.
The appellant, Seaboard Air Line Railroad Company, appeals from an adverse judgment rendered by a jury in the Circuit Court of Hillsborough County, Florida.
Appellee-plaintiff brought an action against Seaboard Air Line Railroad Company, a foreign corporation, Southern Concrete Industries, Inc., d/b/a American Concrete Company, a Florida corporation, R. C. White, C. W. Blackman and Lonnie O. Wallace. White and Blackman are not parties to this appeal as they were dismissed from the suit before trial. The suit arose out of a railroad crossing accident involving a car, in which the plaintiff was riding, and a Seaboard Air Line train. After a jury trial, a verdict of $100,000 was returned in favor of plaintiff, Hawes, and against the railroad. There was also a verdict returned in favor of the owner and operator of the car, Southern Concrete Industries, Inc., d/b/a American Concrete Company, a Florida corporation, Lonnie O. Wallace, *635 and against the plaintiff, Hawes. Final judgment was entered in the case by the trial judge, setting forth the jury’s combined verdict.
We shall write an opinion in this case, No. 67-226, Seaboard Air Line Railroad Company v. Hawes, affirming this judgment, and shall enter an Affirmance in case No. 67-198, Hawes v. Southern Concrete Industries, Inc., et al., Fla.App., 208 So.2d 637.
On December 24, 1964, Hawes and Lonnie O. Wallace were driving on Gunn Highway in Pasco County. Wallace was driving and Hawes was a passenger on the right front seat of the car. Hawes was an attorney for Southern Concrete Industries, of which Wallace was the President. Southern Concrete owned the automobile in which Hawes was riding and Wallace was driving.
At about 3:25 P.M., December 24th, the automobile collided with a train owned and operated by Seaboard Air Line Railroad Company at the intersection of the Seaboard tracks and Gunn Highway. Hawes was injured and brought suit against all of the named defendants. At the trial several issues of negligence of Seaboard and Wallace were brought out. Issues of mutual benefit, joint venture and common purpose of Hawes and Wallace were also brought out. Issues of statutory liability of Seaboard were raised.
Conflicts in testimony as to the warning signs to the approaching railroad and the speed of the automobile were brought out in the record. The record on appeal is some 1600 pages in length and includes 82 assignments of error. The appellant presents five points on appeal:
1. The evidence was insufficient as a matter of law to support a valid finding of actionable negligence on the part of Seaboard.
2. The trial court erred in permitting the jury to determine negligence and liability on the railroad on the basis of the failure of the railroad to have installed at the crossing specific automatic warning devices.
3. The evidence compelled, or at least permitted, the finding that the automobile driver’s negligence intervened to become the sole efficient cause of the collision; and the trial court’s failure to direct a verdict for the railroad or to properly instruct the jury in this regard was error.
4. The relationship between the plaintiff-passenger and his driver required that the driver’s negligence be imputed to the plaintiff as a matter of law.
5. The trial court erred in removing from the jury’s consideration the question of whether plaintiff was guilty of contributory negligence as a bar to his recovery.
The plaintiff, in his amended complaint, Paragraph 2, charged:
“That at the above mentioned time and place and at all times material to this cause of action, the defendant Seaboard Airline Railroad Company and the defendant C. W. Blackman and the defendant R. C. White, negligently and carelessly operated, controlled and maintained the said Seaboard Air Line Railroad train and crossing and the other property of the said defendant Seaboard Air Line Railroad Company, as to directly and proximately cause the above described collision.”
The plaintiff was traveling south as the car, in which he was riding but was not the driver, collided with the train of the defendant at the crossing on Gunn Highway. The driver of the car apparently, from the testimony and pictures introduced into evidence, applied his brakes leaving skid marks ISO feet from the center of the track. Several buildings hindered the view of the tracks as the engine approached the highway.
There is shown on the plat introduced into evidence a “stop, look and listen” sign very close to the track. On the side of the *636 highway from which the train approached there was a mimosa tree, a one story frame building, a frame shed some 14 feet high, a one story office building, a concrete island with three gas pumps, and a one story frame residence IS feet high. Close to the railroad there were yellow striped signs painted on the highway warning of the approaching railroad crossing. There were no flashing signal lights at the crossing but there were crossbuck signs.
Apparently the main contention of the plaintiff was that the railroad failed to have signs other than the yellow stripes on the highway and the normal crossbuck signs and that the crossing was concealed by houses and other obstructions which would necessitate something more than the usual type of warning signs, such as flashing lights, gates, etc.
We think that the factual situation in this case is rather similar to the conditions in Atlantic Coast Line R. Co. v. Smith (2 cases), Fla.1951, 53 So.2d 301, where the writer of this opinion represented the Atlantic Coast Line in both the trial court and in the Supreme Court.
The factual situation in the Smith cases was that the automobile and the defendant’s locomotive collided about 3:30 in the afternoon at the intersection of Central Avenue and the railroad track in the center of Winter Haven. The depot tended to obstruct one’s view when approaching the crossing from the south and box cars were parked on either side at the time of the collision. The controversy was whether or not there were box cars parked along the track sufficient to obstruct the view.
It was contended by the plaintiff that the signs placed there by the railroad were not sufficient and that there should be gates or other devices to protect the traveling public. The railroad contended that it was ringing its bell and sounding its whistle and that it was using and exercising reasonable care. The case went to the jury and a verdict was returned against the railroad. The lower court was affirmed on appeal.
The Supreme Court, in its opinion, said: •(p. 302)
“ * * * It may not always be enough to blow the whistle and ring the bell, particularly is this true where the tracks of defendant are in a congested area where the vision is obstructed and various and sundry noises and other distractions are prevalent.
“From the evidence the locomotive of defendant was running from five to twenty miles per hour. The evidence as to other material facts determinative of the degree of care being exercised, was in hopeless conflict. It may well be that from the size of the verdict the jury considered that there was a basis for apportioning the damages. At any rate, after thorough consideration, we have reached the conclusion that there is no logical basis on which we should disturb the judgment. Kenan et al. v. Austin, 146 Fla. 389, 1 So.2d 174; Lowry v. Seaboard Airline R. Co., 5 Cir., 171 F.2d 625; Anderson v. Crawford et al., 111 Fla. 381, 149 So. 656.” (Emphasis added).
In Florida East Coast Railway Company v. Soper, Fla.App.1962, 146 So.2d 605, the Third District Court of Appeal, in discussing the degree of care required of a railroad in operation of a train at crossings, stated that it was dependent upon the circumstances of the particular case and the danger prevalent at a particular crossing.
The court, in its opinion, page 607, said:
“The appellant contends that the trial court erred in failing to direct a verdict in its behalf since the evidence amply demonstrates full compliance with the law and, therefore, a total absence of negligence. This contention would merit serious consideration if the degree of care required of a railroad in a case such as this were fixed, requiring no more than audible and visual warnings and compliance with the laws relative to speed *637 and erection of crossing signs. However, the degree of care is variable and dependent upon the circumstances of a' particular case and the danger prevalent at a particular crossing. * * * ”
The railroad argued in the Florida East Coast Railway case, supra, the same issue being argued in the instant case, that is, the failure of the railroad to have installed at the crossing specific automatic warning devices. The court further said in Florida East Coast Railway Company v. Soper, supra, p. 608:
“Counsel for the appellees argues to the jury that this accident would not have occurred if the appellant had equipped this crossing with flashing lights, bells and gates. This argument, the appellant contends, was highly prejudicial and resulted in its being convicted, not of negligence, but of failing to have a particular type of safety device or devices at this crossing when it was required by law to maintain only a 'crossbuck’ warning sign. We find this contention to be without merit.
“Although the law required only a 'cross-buck’ sign, the appellees did not charge the appellant with failure to have a particular type of device required by law but with failure to take such reasonable and necessary precautions at this particular crossing as were demanded by the degree of danger which existed. Under these circumstances the jury was entitled to know the conditions at the crossing. The nature of the warning devices present was one of those conditions * * * The argument to the jury that gates, bells and flashing lights would have saved the lives of the two decedents was, in our opinion, no more than legitimate comment of counsel on these conditions and what he considered the evidence disclosed as to the degree of appellant’s failure in the discharge of its duty. One may discharge duties required by law but such would not necessarily absolve him from a charge of negligent conduct when common sense and ordinary prudence would demand greater precaution. * * * ”
We conclude that in this case there was a factual situation for the jury to determine; whether considering the location of the railroad, the obstruction of the view of the railroad from the highway, and whether better look-out protection should be afforded the traveling public. In other words, we conclude that this was a jury case and that there was sufficient evidence to support the jury’s verdict.
Affirmed.
LILES, C. J., and HOBSON, J., concur.