**ATLANTIC COAST LINE R. CO. v. PIDD.**

No. 13757.

United States Court of Appeals
Fifth Circuit.

June 5, 1952.

Rehearing Denied July 21, 1952.

G. L. Reeves, Tampa, Fla., Charles Cook Howell, Wilmington, N. C., for appellant.

William A. Hamilton, Olin E. Watts, Jacksonville, Fla., John Marshall Green, Ocala, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is an appeal in a railroad grade crossing case, tried to a jury, with verdict for plaintiff below.

Mrs. W. D. Pidd, a 46 year old housewife for whose death the verdict was returned, was driving a car with her sister as a passenger in the right-hand front seat, along U. S. Highway 441. About one mile east of the town of Oklawaha, in Marion County, Florida, where the highway runs approximately in an easterly-westerly direction, defendant's tracks cross it diagonally from southeast to northwest, at an angle of about 35 degrees. Decedent was unfamiliar with the crossing, though she had once crossed it going in the opposite direction several days before her fatal injury.

When injured, decedent was driving from west to east along the highway. The train was proceeding from southeast to northwest, thus approaching the crossing from the right-hand side of decedent's car—the side away from the driver. The railroad tracks southeast of the crossing, from whence the train was approaching, are straight and level for approximately half a mile. The highway is straight and level for a distance of about 657 feet west of the crossing, where it begins to curve to the south. The decedent had just rounded this curve and was proceeding easterly along the straight stretch of road when the collision occurred. Approaching the crossing from the west, going toward the east, as was decedent, several warning signs are in view. At a distance of 563 feet west of the crossing, there was painted on the pavement with white paint, a sign consisting of a large "X," extending about 21 feet along the highway, flanked on its right and left by a large letter "R." On the south shoulder of the highway, on decedent's right, 279 feet west of the crossing, there was a round reflector type warning sign, 30 inches in diameter, with a black "X" flanked on either side by the letter "R." At a point 184 feet west of the crossing, there was a white sign, 3 by 4 feet, at an elevation of 7 feet above the ground, bearing diagonal black lines making a large "X" across it face, and reading "Stop—R. R. Crossing—Fla. Law." On the pavement 25 feet west of the crossing there were painted, with white paint, two parallel bars, one foot wide, extending across the highway. The decedent passed these signs in approaching the crossing. Across the track and immediately to the east of the crossing, on the right-hand shoulder of the road, was the usual "crossbuck" railroad warning sign, while still further east but on the left of the road could be seen the backs of two warning signs.

West of the crossing, along the south side of the highway, and in the area between the highway and the railroad, but off the railroad right of way, there is a dense and almost continuous growth of low trees, foliage, and undergrowth, also a sizable building, all of which combine to obstruct an east bound traveler's view of a train approaching from the south, and the engine crew's view of a car approaching from the

west, until they are quite near the crossing. To a traveler approaching from the west, the crossing is practically a "blind" one until the traveler is within approximately 109 feet of the crossing, when the view down the track to the south opens up rapidly. Until then, however, a train approaching from the south is concealed by the foliage from the view of such a traveler.

The collision occurred on Saturday, May 13, 1950, about 4:23 o'clock in the afternoon, at which time traffic is heavy in this vicinity. The weather was clear and sunny. Decedent approached the crossing at a speed of 30 to 35 miles per hour. The train, powered by a diesel locomotive, approached at 45 to 50 miles per hour, coasting with power off, giving the usual crossing signals with whistle and bell. The brakes were applied about 20 feet south of the crossing, but the train did not appreciably slow down before the collision. It stopped with its rear end 700 to 1000 feet north of the crossing.

When decedent was approximately 83 feet west of the crossing, she suddenly and forcibly applied her brakes. Her car skidded to and stopped upon the crossing, leaving clearly visible skid-marks along the pavement for that distance. The passenger on the front seat got out safely, but the train struck the car as decedent was endeavoring to get out, inflicting fatal injuries. In an action under Fla.Stat.1951, §§ 768.01 and 768.02, F.S.A., the jury awarded her surviving husband $18,000 damages.

On appeal, the railroad company contends (1) that it was guilty of no negligence, and (2) that the sole proximate cause of the collision was decedent's failure to stop and look before reaching the crossing, as required by Fla.Stat.1951, § 320.45, F.S.A.

■ The duties and obligations of a railroad company and of a traveler on the highway at a public crossing are mutual and reciprocal. The trains have the right of way, and it is the duty of a highway traveler to give them precedence, but it is also the duty of the railroad company to exercise reasonable care for the safety of travelers on the highway, to give warnings of a train's approach which will be reasonably effective in the circumstances, and to have its train under control appropriate to the circumstances. It is of course the duty of a traveler on the highway to exercise reasonable care for his own safety. The degree of diligence and caution to be exercised by each is such as a prudent man would exercise in the circumstances involved. Roberts v. Powell, 137 Fla. 159, 187 So. 766; Texas & P. Ry. Co. v. Cody, 166 U.S. 606, 17 S.Ct. 703, 41 L.Ed. 1132. A railroad company can not regulate or remove obstructions which are off its right of way. But it can, and should, regulate the speed of its trains, and the signals of their approach at crossings, so as to give reasonably adequate warning in the circumstances to a traveler who is exercising reasonable care for his own safety. Atlantic Coast Line Railroad Co. v. Weir, 63 Fla. 69, 58 So. 641, 41 L.R.A.,N.S., 307.

■ We do not say that this decedent was free from negligence. On the contrary, there is ample evidence to sustain a finding of negligence on her part. But neither can we say that, as a matter of law, the railroad company was free from negligence. In actions of this character in Florida, contributory negligence is not a complete defense. In railroad cases, when both parties are at fault the plaintiff may recover, but the amount of the recovery is reduced in the proportion that plaintiff's negligence bears to the negligence of both parties. Fla.Stat.1951, Sec. 768.06, F.S.A.

■ Even if decedent was negligent, the character of the crossing[1] is to be considered, along with the restricted view toward the south; the fact that decedent was unfamiliar with the crossing while the engineer of the train was thoroughly familiar with it; the fact that the crossing was heavily traveled and that the collision occurred at a heavy traffic hour; whether,

1. Seaboard Air Line Ry. Co. v. Watson, 103 Fla. 477, 137 So. 719, affirmed 287 U.S. 86, 53 S.Ct. 32, 77 L.Ed. 180; Northern Pac. Ry. Co. v. Moe, 8 Cir., 13 F.2d 377; Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12; Knorp v. Thompson, 357 Mo. 1062, 212 S.W.2d 584, 5 A.L.R.2d 103.

considering the speed of the train and the restricted view at the crossing, the signals given were reasonably adequate, or whether slower speed or more effectual signals[2] were essential to due care in the circumstances; and whether the engineer was reasonably alert in discovering decedent's peril and in stopping the train. Decedent applied her brakes when she was 83 feet from the crossing, indicating that she then saw the train. The train's brakes were not applied until it was within about 20 feet of the crossing, although the fireman said he saw the automobile through the trees when the train was 200 to 250 feet south of the crossing.

While the crossing is well marked, it is also true that a traveler on the highway approaching from the west can not see a train approaching from the south until he is almost on the crossing. The jury may therefore have found that the decedent, being unable to see the train, did not proceed heedlessly into an apparent danger so as to make her negligence the sole proximate cause of the collision. The "cross-buck" sign east of the crossing may also have confused decedent. It was on her right-hand side of the road, with the warning words "Railroad Crossing" facing her. She may therefore have thought the crossing was beyond the sign. Instead, the sign was beyond the crossing, as she approached it.

█ These and other matters which might appropriately be considered on the question of the railroad's negligence, vel non, are typical matters for jury appraisal. Reasonable minds might differ thereon. The evidence would support a finding that both parties were negligent, and the amount of the verdict is consistent with an apportionment of the damages in accordance with the Florida statute. It was for the jury to say which of these parties failed to exercise care commensurate with the circumstances, or whether they both failed. Atlantic Coast Line Railroad Co. v. Hadlock, 5 Cir., 180 F.2d 105; Lowry v. Seaboard

Airline Railway Co., 5 Cir., 171 F.2d 625; Atlantic Coast Line Railroad Co. v. Freeman, 5 Cir., 193 F.2d 217; Illinois Central R. Co. v. Aucoin, 5 Cir., 195 F.2d 983; Seaboard Air Line Railroad Co. v. Watson, 94 Fla. 571, 113 So. 716; Seaboard Air Line Railroad Co. v. Myrick, 91 Fla. 918, 109 So. 193. This case differs on the facts from Van Allen v. Atlantic Coast Line Railroad Co., 5 Cir., 109 F.2d 780.

█ Appellant also asserts that the verdict is excessive. A verdict is unreviewable by an appellate court for alleged excessiveness if it is excessive only in fact. It is reviewable only for excessiveness in law, when a refusal by the trial court to set it aside on that ground constitutes an abuse of discretion. The trial court's denial of the motion here involved does not offend that rule. Sunray Oil Corp. v. Allbritton, 5 Cir., 188 F.2d 751; Atlantic Greyhound Corp. v. Crenshaw, 5 Cir., 99 F.2d 449. This is also substantially the rule in Florida. See Margaret Ann Super Markets v. Scholl, 159 Fla. 748, 34 So. 2d 238.

Appellant also assigns as error the admission, over its objection, of evidence adduced by plaintiff that the train left Leesburg at 4:04 p. m., and that the accident occurred 16½ miles north of Leesburg at 4:23 p. m., so that the average speed of the train over this distance could be computed to be about 52 miles per hour.

█ Evidence tending to show the speed of a vehicle just prior to a collision is admissible if not too remote, in time or distance, to be relevant. Admissibility of such evidence depends upon the facts of each case, and rests largely in the discretion of the trial court. Compare Atlantic Greyhound Corp. v. Crenshaw, 5 Cir., 99 F.2d 449; and Atlantic Coast Line Railroad Co. v. Hadlock, 5 Cir., 180 F.2d 105.

█ We see no error in admitting the evidence here in question. The testimony is not too remote, and it is pertinent in connection with other testimony as to the speed of the train. The computed speed, about 52

2. This is not to judicially determine generally that mechanical or other protective devices are necessary at the crossing at all times, which is a legislative function, but whether due care was used on this particular occasion. See Lowry v. Seaboard Airline R. Co., 5 Cir., 171 F.2d 625.

miles per hour, differs only slightly from the engineer's testimony, which was that the train approached the crossing coasting at 45 to 50 miles per hour; that when he applied the brakes he looked at the speedometer, and the speed "was 45, 46, or 47 miles per hour." Appellant's other employees in the train crew estimated the speed at 45 to 50 miles per hour.

Finding no reversible error, the judgment is affirmed.