72 So.2d 789 (1954)
MARTIN
v.
RIVERS.
Supreme Court of Florida. Division B.
May 21, 1954.
*790 Loftin, Anderson, Scott, McCarthy & Preston and Don G. Nicholson, Miami, for appellant.
Davis, Kirsch, Brown & Gorman, Ft. Lauderdale, for appellee.
DREW, Justice.
William Rivers was struck and killed by a train operated by the appellant, John W. Martin, as trustee of the property of the Florida East Coast Railway Company. The widow, the appellee here, brought suit in the court below for the alleged wrongful death of her husband and the trial resulted in a jury verdict in favor of the widow in the sum of $26,250. The lower court ordered a remittitur of $16,250 and upon such remittitur being filed, entered judgment against the railroad in the sum of $10,000. This judgment is before us for review.
The facts disclosed by the record, and concerning which there is no material dispute, are as follows: Train No. 29 was due in Fort Lauderdale, Florida, at 9:00 P.M. but was about fifteen or twenty minutes late on the clear night of January 5, 1951. As the train approached the City of Fort Lauderdale on the southbound or west track (the railroad being double tracked in this area) and was approximately one mile north of the city, it sounded its horn and set its automatic bell ringing. The bell continued to ring throughout the period of the events herein related. As it approached Broward Street, one block north of Southwest Second Street, it gave the customary whistle signals. The train was then "free-wheeling," the motors were cut off, the brakes were applied and it was in the process of slowing down for the station just south of the Southwest Second Street crossing. Between Broward Street and Southwest Second Street the train again blew its horn. The main headlight and an oscillating or rotating headlight were burning brightly, the bell of the engine was ringing, two large flashing red traffic signals were operating, one on the east side and one on the west side of the crossing at Southwest Second Street, and there was the usual noise occasioned by the movement of a large passenger train as this train approached the Southwest Second Street crossing at a speed of approximately ten miles per hour.
A short distance north of the crossing the fireman sitting on the left side of the engine noticed the deceased, Mr. Rivers, walking westward on the south side of the street in a leisurely and normal manner. He first noticed him when he was near or on the east or northbound track. There was nothing in Mr. Rivers' actions or demeanor that indicated in any way to the fireman that Mr. Rivers did not see the train, the signals, and hear the noise attendant to the movement of the train or in any way suggest to the fireman that he, Mr. Rivers, would not stop or change his course before walking in front of the engine. The fireman said that he thought Mr. Rivers was going to stop and as soon as he realized that he wasn't, he shouted at the engineer who immediately applied the brakes of the train. The record is not entirely clear as to whether the brakes were applied before or at the time of the impact of the train against Mr. Rivers but a careful analysis of all of the testimony on this point reveals without material dispute that the brakes were applied either a second or so before or at about the same time as the impact. It is significant to note that after the brakes were applied the train travelled approximately 150 feet before coming to a stop.
*791 Appellant contends that the evidence adduced at the trial and above narrated establishes that the negligence of Mr. Rivers was the sole proximate cause of his death and by virtue thereof the railroad was entitled to an instructed verdict. The basic contention of the appellee is that while Rivers was negligent, the railroad was also negligent in that it did not bring its train to a stop or attempt to stop it soon enough after it observed Mr. Rivers walking toward the train along the south side of the street and that both being negligent appellee was entitled to recover under the comparative negligence statute, Sec. 768.06, Florida Statutes 1951, F.S.A., which reads as follows:
"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant." (Emphasis supplied.)
In the case of Atlantic Coast Line R. Co. v. Timmons, 160 Fla. 754, 36 So.2d 430, 431, we said:
"* * * The railroad has a right to assume that one crossing its tracks will at least look to see if there is an approaching train, and if so, he will not plunge into its pathway. Appellee did not observe that precaution. From the time he entered the right of way, he had a clear unobstructed view for over 4000 feet in the direction of the train and had nothing to do but lift his eyes in that direction. If he had taken the slightest precaution to look or listen he could have avoided the accident.

"The standard of prudence that one must observe in approaching a grade crossing is not uniform. Some jurisdictions require that one stop, look and listen, regardless of how clear the track is in either direction. Other courts require the traveler to look and listen, the duty to stop, depending on the circumstances revealed by looking and listening. Pokora v. Wabash Ry. Co. 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Baltimore & Ohio R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645. We approve the latter rule in this State and when, as here, it is conclusively shown that the plaintiff did not look or listen, that there was no obstruction whatever to the vision, that the accident took place in a rural community where looking or listening would have avoided it, he is guilty of negligence which was the sole proximate cause of his injury and cannot recover.
"* * * It is clear, however, that appellee neglected to observe the most elementary duty imposed on him to preserve his safety. He was on notice that he was approaching a place of danger and must look out for the train, lest he suffer the consequences. He failed in this, and in doing so, was the sole cause of the accident." (Emphasis supplied.)
This principle has been followed in numerous cases by this Court and notably in the cases of Powell v. Gary, 146 Fla. 334, 200 So. 854; Atlantic Coast Line R. Co. v. Gornto, 89 Fla. 97, 103 So. 117; Egley v. Seaboard Air Line R. Co., 84 Fla. 147, 93 So. 170; Seaboard Air Line R. Co. v. Barwick, 51 Fla. 304, 41 So. 70.
With reference to appellee's contention above noted, there was nothing to submit to the jury. The evidence of the witnesses who testified as well as the undisputed evidence of the distance travelled by the train after the brakes were applied, establishes beyond any question of a doubt that the acts of the deceased, Mr. Rivers, as related herein rendered impotent and powerless the agents of the railroad operating the train to prevent the injury which resulted in Mr. Rivers' death. The fireman had the right, from the facts in the record here, to believe that the deceased was in possession of his faculties and his normal *792 senses, and that with all of the signals of danger, the extent of which were almost overwhelming, he would not walk directly into the path of a moving train. When the fireman finally realized that the deceased was not going to stop and was not going to heed every danger signal possible to give, it was too late for any human agency to extricate the deceased from the situation that he placed himself in or prevent the death which so unfortunately occurred.
We conclude that the undisputed facts in this case entitled the railroad company to a directed verdict. Accordingly the judgment is reversed with directions to enter one in favor of the railroad company.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.