**ATLANTIC COAST LINE RAILROAD COMPANY, Appellant,**

v.

**James L. SWAFFORD, Appellee.**

**No. 15121.**

United States Court of Appeals, Fifth Circuit.

April 8, 1955.

Rehearing Denied May 16, 1955.

G. L. Reeves, Ralph C. Dell, LeRoy Allen, Tampa, Fla., Charles Cook Howell, Vice Pres. & Gen. Counsel A. C. L. R. Co., Wilmington, N. C., for appellant.

T. Paine Kelly, Jr., Tampa, Fla., Thos. W. Butler, Sarasota, Fla., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

TUTTLE, Circuit Judge. .

This is an appeal in a railroad grade crossing case, tried to a jury, with verdict for plaintiff below.

Mrs. James L. Swafford, a 42 year old housewife and rest home operator, for whose death the husband brought the action, was driving a car west on 27th Street outside of Sarasota, Florida, at 5:24 P. M. on December 31, 1952, a clear day. She was returning to her home, some distance from the scene of the accident, after having taken her maid home a few blocks from the crossing in question. She had crossed the railroad on the same street, going in the opposite direction, just a few minutes earlier and, according to the testimony of the maid, she "slowed up for the railroad crossing." As Mrs. Swafford approached the track on her fateful return trip, she passed a typical railroad stop sign with the words "Stop. Fla. Law. R.R.Crossing Atlantic Coast Line," and bearing crossed lines in the form of the letter X across the sign from top to bottom. This sign was off the road to the right and the bottom of the sign was about seven or eight feet from the ground. This sign was 150 feet from the railroad track. Immediately beyond the sign, and on the right side of the road, was a one-story store building which blocked the view of the tracks to the right (north) side of the road. The crossing is plainly apparent from the point where the sign post is located, because the tracks are exposed on both sides of the crown of the road or street on which Mrs. Swafford was driving. Next to the building was a bushy-topped plant, known as a cabbage palm, which also blocked the view to the north. The palm was 80 feet east of the tracks. Upon passing the palm an unobstructed view up the tracks for a long distance was opened up.

When the train, approaching from the north (right side of the automobile) was 200 feet from 27th Street, the engineer and fireman both saw the automobile approaching the crossing from behind the cabbage palm at "a normal speed." The automobile slowed down and both trainmen thought the driver was stopping. There was no expert or other testimony to the effect that Mrs. Swafford was unable to stop when her car was first seen to slow down. Thereafter, after the view of the car was lost to the engineer sitting on the right hand side of the cab, but in plain view of the fireman, the automobile picked up speed and ran in front of the locomotive. The train was traveling between 60 and 65 miles an hour. The automatic bell was ringing and the horn or whistle had been blowing for some 1500 to 1700 feet. The graph that was maintained on the locomotive to show the speed at all times indicated a speed of 63 miles per hour, and that it was on an accelerating curve at the moment of impact. The engineer first knew of the accident when the impact occurred and he then made a heavy service application of the brakes, which he explained

as being proper under the circumstances with seven passenger cars, rather than an emergency application, after the collision had occurred. The car was demolished and Mrs. Swafford was killed, her body being thrown some 166 feet ahead of and to the right of the train.

The tracks of the defendant railroad parallel the city limit line, 200 feet to the west, for some distance north of 27th Street, and they enter the city limits approximately a half mile south of the 27th Street crossing. It was testified that traffic density on 27th Street several blocks to the west averaged 150 vehicles an hour some nine months after the accident, and that traffic conditions were substantially the same as at the time of the accident. There was other testimony that the street, which was a 19-foot surfaced roadway without sidewalks, was much traveled and that the area, while semi-rural, was well populated. Pictures submitted to the jury and brought before us as a part of the record, show that a train crew approaching this crossing was looking down a right-of-way 130 feet wide on level ground with no houses apparent on either side of the single-track road closer than 100 feet; 27th Street was the only railroad crossing within a half mile in either direction.

Upon the submission of the case to the jury a verdict for $9,875.00 was found for the plaintiff below. In submitting it to the jury the court overruled appellant's motion for directed verdict. After judgment appellant moved that the verdict be set aside and that verdict be directed for it or, in the alternative, that a new trial be granted because of alleged error in the admission by the court of certain evidence.

The rules of negligence to be applied in this case are, of course, those enunciated by the Supreme Court of Florida in railroad injury cases.[1]

Appellee relies with assurance on the case of Atlantic Coast Line R. Co. v. Pidd, 5 Cir., 197 F.2d 153, in which this court, in a railroad crossing case in many ways similar to the case at bar, declined to hold that the trial court erred in submitting the issue of the railroad's negligence to the jury. In an earlier case, which superficially appears to have involved many of the same circumstances, this court reversed the judgment of the trial court for not submitting the question of the railroad's negligence to the jury. Lowry v. Seaboard Airline R. Co., 5 Cir., 171 F.2d 625. In those two cases, both of which concerned Florida accidents, the court held that the negligence of the decedent was not so clearly the sole proximate cause of his injury as to make immaterial the negligence, if any, of the company.

Since the rule to be applied is a Florida rule, we have undertaken to find a statement of the underlying principles from the most recently decided Florida cases. We, therefore, quote from Martin v. Rivers, 72 So.2d 789, 791. The court in the Rivers case quoted at length from Atlantic Coast Line R. Co. v. Timmons, 160 Fla. 754, 36 So.2d 430, 431.[2] In undertaking to apply the legal principles

---

1. The Florida statute involved is found in § 768.06, Florida Statutes 1951, F.S.A., which reads as follows:

"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant."

2. This quotation approved so recently follows:

" ' * * * The railroad has a right to assume that one crossing its tracks will at least look to see if there is an approaching train, and if so, he will not plunge into its pathway. Appellee did not observe that precaution. From the time he entered the right of way, he had a clear unobstructed view for over 4000 feet in the direction of the train and had nothing to do but lift his eyes in that direction. If he had taken the slightest precaution to look or listen he could have avoided the accident.

as announced by the Florida Supreme Court to the facts in the instant case, we are faced initially with the unquestioned proposition that the decedent was herself guilty of negligence. This is clear from the fact that Mrs. Swafford had just previously crossed this railroad track, which was marked by the usual railroad marking signs, and had slowed down before doing so; that on the return trip she approached the tracks, which were not only marked by the railroad sign but which were clearly apparent to anyone driving west on 27th Street from at least as far away as the warning sign. She proceeded towards the tracks when the train was approaching the crossing with its whistle blowing and its bell ringing in such manner that it was heard by all of the several witnesses who testified they were in the vicinity of the accident. She approached at "normal" speed and slowed down when she was at a point where she could clearly see the train approaching from her right. The only evidence on the point is to the effect that the locomotive engineer lost sight of her car at a time when it was still slowing down and that at that point the train was about 60 feet north of the crossing. Both engineer and fireman and a third witness testified, without dispute, that after slowing down her automobile darted ahead by increasing its speed and thus ran onto the track immediately in front of the locomotive.

The foregoing analysis of the situation at the time of impact, it seems to us, points out the essential distinctions between this case and the Atlantic Coast Line R. Co. v. Pidd, supra, and Lowry v. Seaboard Airline R. Co., supra.

In the Pidd case the decedent applied the brakes to her automobile at about the point where she could first see the approaching train. Skid marks on the road showed that her effort to stop continued until the car came to a stop directly in the path of the train. Moreover, the evidence showed she was not familiar with the crossing. In the Lowry case the accident happened on a city street within the city limits of Jacksonville, Florida, where all city traffic, including city busses, regularly crossed the track and where, as was testified to by the defendant's fireman, automobiles occasionally stopped behind busses, halted for the track, but occasionally passed around the bus apparently thinking the bus had stopped for taking on passengers. Such a bus was stopped at the tracks in the Lowry case. There was the further circumstance that there was considerable

---

" "The standard of prudence that one must observe in approaching a grade crossing is not uniform. Some jurisdictions require that one stop, look and listen, regardless of how clear the track is in either direction. Other courts require the traveler to look and listen, the duty to stop, depending on the circumstances revealed by looking and listening. Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Baltimore & Ohio R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645. We approve the latter rule in this State and when, as here, it is conclusively shown that the plaintiff did not look or listen, that there was no obstruction whatever to the vision, that the accident took place in a rural community where looking or listening would have avoided it, he is guilty of negligence which was the sole proximate cause of his injury and cannot recover.

" '* * * It is clear, however, that appellee neglected to observe the most elementary duty imposed on him to preserve his safety. He was on notice that he was approaching a place of danger and must look out for the train, lest he suffer the consequences. He failed in this, and in doing so, was the sole cause of the accident.' "

Having repeated the law applicable in such cases by reference to the Timmons case, the Florida Supreme Court then said:

"The fireman had the right, from the facts in the record here, to believe that the deceased was in possession of his faculties and his normal senses, and that with all of the signals of danger, the extent of which were almost overwhelming, he would not walk directly into the path of a moving train. When the fireman finally realized that the deceased was not going to stop and was not going to heed

dispute as to the adequacy of the sounding of the whistle on the occasion in question. This added up to the fact "that she did not necessarily proceed recklessly into an evident danger, so to make her negligence the sole proximate cause of her injury." [171 F.2d 629.]

We believe that there can be no dispute but that in the case at bar Mrs. Swafford was herself seriously and gravely negligent.

The next question is whether decedent's negligence was the sole proximate cause of her death. Appellant strongly argues in its brief that for us to affirm the decision of the court below would be tantamount to holding that speed of 60 to 65 miles per hour is per se sufficient evidence of negligence to sustain a jury's verdict. While we do not agree with this conclusion, we find it impossible to isolate any act of omission or commission by defendant's servants in the operation of the train from which the jury could infer negligence having a causal connection with the injury to Mrs. Swafford. We find for instance in the Timmons case, supra [160 Fla. 754, 36 So.2d 431], the following statement, which is taken from the quotation in footnote 2:

"* * * The railroad has a right to assume that one crossing its tracks will at least look to see if there is an approaching train, and if so, he will not plunge into its pathway. Appellee did not observe that precaution. From the time he entered the right of way, he had a clear unobstructed view for over 4000 feet in the direction of the train and had nothing to do but lift his eyes in that direction. If he had taken the slightest precaution to look or listen he could have avoided the accident."

It is significant to note that in the court's statement of the facts of the Timmons case, the court made the following statement:

every danger signal possible to give, it was too late for any human agency to extricate the deceased from the situation

"The collision took place at Raiford, a rural community, about eleven A. M., January 21, 1947, in clear day light where the right of way was one hundred feet wide and straight and devoid of obstructions to vision. The evidence shows that the train was moving fast and perhaps above the customary rate of speed. But the bell was ringing, the whistle was blowing constantly, the brakes were applied and all the precautions required of defendant were observed. Timmons was familiar with the crossing, passed over it every day and testified that he paid no attention as he approached it. A case might arise in which the speed testified to would be excessive, but under the circumstances here, we do not see that it was material."

It is to be noted that the right-of-way in the Timmons case was 100 feet wide. Nothing is said as to the nature of the surrounding country except that the collision took place at Raiford, a rural community. As stated in the recitation of facts in this case, the railroad right-of-way was 130 feet wide and no obstructions of any kind were visible to the engineer or fireman for as much as 80 feet to either side of the single track. Moreover, although the crossing in question is called "27th Street" it is undisputed that only one out of approximately ten such "streets" crossed the tracks. This was the only crossing within a half mile in each direction.

Appellee stresses the fact that the engine crew did not apply the brakes until the accident occurred. An analysis of the speed of the train and the suddenness with which the decedent's car resumed its forward approach to the track indicates that any other action would be almost beyond physical and mental capability. The train was 200 feet from the crossing at the time Mrs. Swafford's automobile was seen 80 feet from it. At

that he placed himself in or prevent the death which so unfortunately occurred."

63 miles an hour, the train was traveling 92½ feet per second, which means that whatever happened between the time the engineer and fireman first saw Mrs. Swafford's car and the collision would have to be done in less than 2½ seconds. During more than half of that time Mrs. Swafford was giving every indication of coming to a stop and thus making unnecessary any further action by the train crew. The engineer testified that this was the state of affairs when he lost sight of the car when the engine was 60 feet from the crossing. It would be obviously impossible for the fireman to have reacted and passed word to the engineer and for him to have applied the brakes within the fraction of a second remaining before the engine reached the crossing and struck the car. Mrs. Swafford, therefore, it seems to us, was strictly in the position of the appellee in the Rivers case, supra [72 So.2d 791], in which the court said " 'It is clear, however, that appellee neglected to observe the most elementary duty imposed on him to preserve his safety. He was on notice that he was approaching a place of danger and must look out for the train, lest he suffer the consequences. He failed in this, and in doing so, was the sole cause of the accident.' "

Appellee makes much of the speed of the train at the time of the accident. On the other hand appellant vigorously contends that speed cannot of itself constitute negligence. It seems to us that the statement by Judge Strum in Atlantic Coast Line R. Co. v. Pidd, supra [197 F. 2d 155], covers this point adequately: "A railroad company can not regulate or remove obstructions which are off its right of way. But it can, and should, regulate the speed of its trains, and the signals of their approach at crossings, so as to give reasonably adequate warning in the circumstances to a traveler *who is exercising reasonable care for his own safety*. Atlantic Coast Line R. Co. v. Weir, 63 Fla. 69, 58 So. 641, 41 L.R.A., N.S., 307." (Emphasis supplied.)

 As we understand this principle, it is the duty of the railroad company not to permit its trains to travel at a speed which, when maintained in connection with adequate warning devices, would endanger a pedestrian or automobile driver who is himself not negligent. In other words, the railroad can measure the care which it exercises both in relation to speed and warning devices on the assumption that members of the general public will act as reasonably careful and prudent persons. The degree of care which is required of the railroad should, therefore, not be increased by reason of the failure of members of the public to exercise reasonable care for their own safety. Measured by these standards, we think it clear that the plaintiff below failed to show any act of negligence on the part of the employees of the defendant.

It being clear under the Florida law that the accident, resulting in the death of Mrs. Swafford, was attributable solely to her own negligence, the trial court erred in refusing to direct a verdict for the defendant.

The judgment is reversed with directions to enter a judgment for the defendant.