113 So.2d 420 (1959)
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, Appellant,
v.
Louise WALKER, Appellee.
No. B-66.
District Court of Appeal of Florida. First District.
June 25, 1959.
*421 S. Dilworth Clarke, Monticello, and Kurz & Toole, Jacksonville, for appellant.
Williams & Owens and Truett & Watkins, Tallahassee, for appellee.
WIGGINTON, Acting Chief Judge.
This appeal is by defendant from a final judgment entered upon a jury's verdict awarding damages to plaintiff in the sum of $6,000. The errors assigned are directed to the trial court's refusal to grant a new trial upon the grounds, among others, that the verdict is contrary to the manifest weight of the evidence and justice of the cause; and, that the court erred in its instructions to the jury on the statute creating a presumption of negligence against a railroad company.
The collision out of which plaintiff's damages arose occurred in the daytime at a rural crossing where a graded county road intersects defendant's railroad track at right angles. Plaintiff drove her automobile in a westerly direction upon the single track on which defendant's train was proceeding in a southerly direction. The locomotive struck the automobile on the right side, propelling it clear of the track in a southwesterly direction.
The track runs in a straight line for several miles, both north and south of the crossing. The road on which plaintiff was traveling follows a circuitous route through the country, but straightens to an east-west course a short distance east of its intersection with the track. As the road approaches the track from the east there is a clear view of the track to the north of several hundred feet. A view of the track to the south of the crossing is obstructed by an embankment.
Plaintiff testified that she was thoroughly familiar with the crossing and as she approached *422 it at approximately 20 miles an hour she was listening for warning signals of any approaching train. Hearing no signal she continued toward the crossing and by looking straight ahead, her peripheral vision permitted her to see "a good long way" up the track to the right from which direction the train was coming. By observing the track in the manner stated, plaintiff did not see the train which was approaching at a speed of approximately 25 miles per hour. She admitted she never turned her head to look toward the right as she approached the track, but concentrated her attention to the left in an effort to see around the embankment in order to determine if a train was approaching from the south. When she was close enough to the track to see that it was clear toward the south, she turned and was immediately struck by the locomotive. Plaintiff offered no corroborating evidence relating to the events surrounding the collision.
Both the fireman and engineer testified that as the locomotive reached a whistle post approximately 1200 feet north of the crossing the engineer commenced giving the standard crossing whistle which consists of two long, one short and one long blast of the train whistle. While the signal was being given, the fireman observed plaintiff driving along the winding road in the direction of the crossing. He stated that he thought plaintiff heard the whistle and would stop her automobile short of the crossing. When it appeared to the fireman that plaintiff was not decreasing her speed and was not going to stop, he shouted to the engineer who immediately threw the train into an emergency stop. The weight and momentum of the train prevented it from being brought to a halt before reaching the crossing, at which point it collided with plaintiff's automobile which was astride the track at the time of impact. The locomotive reached a point some 1,000 feet south of the crossing before it was brought to a complete stop.
Two disinterested local citizens who were in the immediate vicinity of the crossing both testified that the warning whistle on the train commenced to blow about 1,000 feet north of the crossing, and continued to blow until the air brakes were applied shortly before the collision occurred.
Appellant contends that the evidence summarized above is insufficient to sustain the verdict, and that a new trial should have been granted. Appellee contends that the evidence is sufficient to establish that defendant was negligent in failing to give an appropriate warning signal of the train's approach to the crossing, and that it was operating its train at an excessive speed in a negligent manner without proper regard for plaintiff's safety.
The settled law of Florida requires a person approaching a grade crossing to look and listen for oncoming trains, and to stop if what he sees indicates that it would be dangerous to proceed further.[1] Although by looking straight ahead, plaintiff could see up the track to her right for a limited distance as she approached the crossing, she admits that she did not turn her head nor look directly to her right in the direction from which the train was coming. She was so intent on looking to her left around the end of the embankment to see if a train was approaching from the south that she failed to see that which was clearly visible if she had taken only reasonable precautions for her own safety. A similar factual situation was present in the Price case[2] where the evidence clearly indicated that from a point at which plaintiff's car could have been easily stopped before reaching the crossing there was a clear view for a considerable distance up the track in the direction from which the train was approaching. The plaintiff, however, failed to look in that *423 direction, but looked only to his right toward another train which was also approaching the crossing from the opposite direction. The Supreme Court held that there was no excuse for plaintiff's failure to determine before going on the track, whether a train was coming from an opposite direction from that in which he was looking. It was held that plaintiff brought about the injury to himself and his family through his own neglect to beware of an approaching engine when he drove on the track, and that the railroad company was in no wise to blame for what happened
The only substantial evidence of negligence by defendant presenting a jury question concerns the conflict with respect to giving appropriate warning of the train's approach. The uncorroborated testimony of plaintiff is that defendant failed to sound any warning whistle as the train converged on the crossing. This positive assertion is predicated on the failure of plaintiff to hear any warning signal as she proceeded toward and upon the track. Her testimony is in direct conflict not only with that of the train crew, but also with that of two disinterested local citizens who were in position to see and hear the train's approach and who testified that the whistle started blowing a distance of several hundred feet north of the crossing, and continued to blow until the emergency brakes on the train were applied.
Whether the testimony of plaintiff be categorized as positive or negative in character is immaterial. Verdicts rendered in favor of plaintiffs under facts similar to those here presented have been repeatedly held, as a matter of law, to be contrary to the manifest weight of the evidence and justice of the cause. In such cases the verdicts have not been permitted to stand.[3]
Plaintiff further contends that the evidence shows defendant was negligent in that it was running its train at a greater speed than was proper under the circumstances. Furthermore, the fireman having observed plaintiff proceeding toward the crossing should have known there was a possibility that she might not have heard the train's warning signal and might not stop short of the crossing. She argues that the engineer was therefore negligent in not keeping his train under such control as would have permitted him to bring it to a stop before colliding with plaintiff.
It cannot be seriously contended that it is an act of negligence for a railroad train to proceed on its own tracks at a speed of 25 miles an hour through the rural area of a county. The policy of the law in this jurisdiction is committed to the rule that a train has the right-of-way at a crossing and is not required to be retarded until it becomes apparent that one approaching the track is not going to stop.[4] Our Supreme Court early approved the rule that the engineer in charge of a railroad locomotive has the right to presume that an adult person whom he sees upon or beside the track ahead of his approaching engine is in possession of his faculties, and that he will obey the instinctive law of self-preservation by getting off the track if already on it, or that he will not get on it, if already off; and, in such case it would not be negligence on the engineer's part if he failed to attempt to stop his engine, unless he knew the party, and that he labored under some disability.[5]
Since this cause must be remanded for a new trial we deem it necessary to rule upon that part of the court's charge to the jury in which he instructed on the statute creating a presumption of negligence against a *424 railroad company.[6] The portion of the charge to which objection was made, and which is assigned as error on appeal, is as follows:
"* * * The laws of the State of Florida do provide certain specific considerations to be given with regard to the operation of railroad trains and locomotives. I will read from the specific statute on that question and the parts of it which are material here.
"`A Railroad company shall be liable for any damage done to persons or property by the running of locomotives or cars, or for damage done by any person in the employ and service of such company unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence.'
"In other words, Gentlemen, the law of Florida places upon a railroad company operating in this State liability for any damage that is done to persons or property by the running of their locomotives or cars, or for damage done by any person in their employ and service unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence. In other words, Gentlemen, it must be shown for them to escape liability that their agents have exercised reasonable care and diligence in the operation of their cars or their trains."
Appellant contends that the inescapable inference from the above-quoted instructions is that the statutory presumption of negligence was given the weight of evidence, and the jury was instructed to consider such presumption along with the other evidence adduced by plaintiff in determining defendant's negligence. Although the instruction as framed does not explicitly advise the jury that a presumption of negligence exists against defendant the inference that this is the case seems clear, and is susceptible of being so understood by the jury.
The Supreme Court of the United States, in reviewing a decision rendered by the Supreme Court of Georgia on a statute (Civ.Code 1910, § 2780) identical with the one now under consideration, held that the statute had been so interpreted as to create an inference with the weight of the evidence which can be weighed against opposing evidence and that it should prevail unless such opposing testimony is found by the jury to predominate. The Supreme Court ruled that such interpretation by the Georgia court was in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, and the statute so interpreted was therefore held invalid.[7]
The Florida statute has been interpreted by the Supreme Court of Florida in numerous cases, and each time it has been upheld for the reason that our courts have never given it any such interpretation as was given the Georgia statute by the Supreme Court of that State. The mere fact of creating a presumption of liability does not render the Florida statute invalid. "It is only when that presumption is permitted to supplant and take the place of evidence that it will be held invalid. In other words, if there is a complete absence of material evidence to contradict a showing of negligence on the part of the railroad company, the statute will, then supply or create a presumption of liability but if any material evidence is offered by the railroad company tending to show the exercise of ordinary and reasonable care and diligence on its part, the presumption vanishes. In a controverted issue such as is presented *425 here when the plaintiff puts on his evidence to support his charge of negligence and forthwith the defendant responds with evidence showing that it exercised ordinary and reasonable care and diligence, the presumption is out of the picture and is as if it were never in the statute. If there are conflicts in the evidence, it becomes the duty of the jury to reconcile them and reach a verdict without any reference whatever to the presumption created by the statute. Any suggestion to the jury that it then exists is prejudicial."[8] In interpreting the statute in question the Fifth Circuit Court of Appeals said "The presumption created by the statute above quoted is an administrative presumption which serves only to relieve the plaintiff from introducing proof of negligence in her case in chief, which would otherwise be necessary. As the presumption is not to be weighed as evidence, the jury is not concerned with it. When the trial has reached the stage of charging the jury, the presumption has fully served its purpose, and has completely disappeared from the case."[9]
It is thus seen that when defendant in this case offered evidence proving or tending to prove that it had exercised all ordinary and reasonable care under the circumstances, the presumption created by the statute vanished and was no longer a matter to be properly considered by the jury. It was unnecessary for the court to charge the jury on the existence or effect of the statute, and the charge as given could do nothing less than confuse the issues and prejudice defendant in securing a fair trial.
We have carefully considered the remaining assignments of error, but find them to be without substantial merit.
For the foregoing reasons the judgment appealed from is reversed, and the cause remanded for a new trial.
Reversed.
CARROLL, DONALD, J., and MOODY, JAMES S., Associate Judge, concur.
NOTES
[1] Atlantic Coast Line Railroad Company v. Timmons, 160 Fla. 754, 36 So.2d 430.
[2] Atlantic Coast Line Railroad Company v. Price, Fla. 1950, 46 So.2d 481.
[3] McAllister v. Tucker, Fla. 1956, 88 So.2d 526; Myers v. Atlantic Coast Line Railroad Company, Fla. 1956, 86 So.2d 792; Loftin v. Kubica, Fla. 1953, 68 So.2d 390.
[4] Martin v. Rivers, Fla. 1954, 72 So.2d 789; Atlantic Coast Line Railroad Company v. Miller, 53 Fla. 246, 44 So. 247.
[5] McAllister v. Tucker, see note 3; Florida Central & P.R. Co. v. Williams, 37 Fla. 406, 20 So. 558, 559.
[6] F.S. § 768.05, F.S.A.
[7] Western & Atlantic R.R. Co. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884.
[8] Atlantic Coast Line Railroad Company v. Voss, 136 Fla. 32, 186 So. 199, 200; Atlantic Coast Line Railroad Company v. Richardson, 117 Fla. 10, 157 So. 17.
[9] Seaboard Air Line Railroad Company v. Bailey, 5 Cir., 190 F.2d 812, 815.