433 F.2d 89
 Mary Lee BOX as guardian of Vera Mae Ellis, Bobby Lee Ellis and Johnny D. Ellis, minors, and Sara Ellis, Plaintiffs-Appellees,
v.
SOUTH GEORGIA RAILWAY COMPANY, a Georgia corporation, Defendant-Appellant.
 No. 28265.
 United States Court of Appeals, Fifth Circuit.
 October 12, 1970.
 
 James E. Cobb, Marion R. Shepard, and Mathews, Osborne & Ehrlich, Jacksonville, Fla., for defendant-appellant.
 Truett & Watkins, Steve M. Watkins, J. Ben Watkins, Tallahassee, Fla., for plaintiffs-appellees.
 Before AINSWORTH, DYER and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 South Georgia Railway Company, a Georgia corporation, (Railway) appeals from a jury verdict and judgment against it in this diversity case brought under the Florida Death by Wrongful Act Statutes, F.S.A. § 768.01 et seq.[1]
 
 
 2
 Mary Lee Box brought the suit on behalf of the minor children of the decedent Josie Ellis. After denying Railway's motion for judgment n. o. v. the trial court entered judgment on the verdict and this appeal was timely taken by Railway. The case has been tried twice. On the first occasion the court directed a verdict for the defendant railroad as to Mrs. Ellis' contributory negligence but submitted the case on the "last clear chance" doctrine. The jury failed to agree and a mistrial was declared. On the second trial, the district judge submitted the case to the jury on the issues of negligence, contributory negligence and on "last clear chance", after denying the defendant railroad's motion for directed verdict. The jury found for the plaintiffs and the court denied post-trial motions by the railroad for judgment n. o. v. and for new trial. This appeal ensued. We reverse and direct entry of judgment n. o. v. for the defendant-appellant.
 
 
 3
 Because we regard the facts as decisive on this appeal we state them in considerable detail.
 
 
 4
 Josie Ellis was the widowed mother of eight children, four of them minors living with and partly dependent upon her for support. On the morning of April 4, 1967, she was walking in a westerly direction upon and along railroad tracks of defendant-appellant (Railway) on the outskirts of Perry, Florida. She was apparently taking an often used short cut from her home to "the store", situated farther west and on the opposite side of the tracks. At a time after Mrs. Ellis had crossed Duval Street, she was struck and fatally injured by the Railway's train moving in the same direction as and overtaking her. The train's consist was an engine and four cars. Railway's crew was engaged in switching cars, and for a distance of about 500 feet before reaching the crossing was backing, that is to say that the engine faced to the east and was pushing the four cars behind it westerly toward and over the crossing. The train speed was ten to twelve miles per hour. From the crossing westerly the track curved to the right or toward the north.
 
 
 5
 The only witnesses as to the accident were the members of Railway's train crew: Engineer Simon, Conductor Irick, and Brakemen Roberts and Hill. From his seat in the cab of the engine on the left side, because of the curve in the track, the engineer never saw the deceased. As the train backed toward the crossing Conductor Irick, seated on the right side of the cab, gave Mr. Simon the all clear for the crossing. The two brakemen were riding on the leading end of the first car, Roberts on the left side and Hill on the right. As the train proceeded without slackening or increasing its speed Mr. Simon saw Roberts run out from the train and give a hand signal to stop, the first notice conveyed to him of any trouble or emergency. He applied the emergency brakes full and the lead car struck Mrs. Ellis about 150 to 158 feet west of the crossing. At the train's speed and with its consist Simon estimated it would require 150 feet to stop it.[2] The leading end of the lead car actually stopped something over 120 feet from the point of impact.
 
 
 6
 Conductor Irick was seated on the right side of the cab when he observed that the crossing was clear and so informed Engineer Simon. He then moved to the middle of the cab and never saw Mrs. Ellis.
 
 
 7
 It was the duty of Brakeman Roberts riding the left side of the lead car to check the crossing for vehicular and pedestrian traffic. He first saw the decedent when he was three to four car lengths from the crossing and she was 10 to 20 feet to the west of it.[3] She was walking at a normal pace between the rails and Roberts observed her to turn and look back when the engineer blew the whistle signal for the crossing. Roberts expected her to step off the track. As the lead car crossed the crossing the two brakemen began to scream and whistle at her and she turned her head sideways as if glancing back toward the train, but continued to walk the track. When the lead car was 2½ to 3 car lengths (about 80 to 100 feet) from her Roberts jumped off the train, ran a few steps to the side and gave Engineer Simon the emergency stop signal.
 
 
 8
 Brakeman Hill from his position on the right of the lead car first saw Mrs. Ellis as the car came up to the crossing. He testified she was then 75 to 100 feet on the other side, and that when the whistle blew she glanced around and kept on walking. Hill shouted at her but she made no attempt to get off the track so he made an effort, albeit a futile one because of the time required, to reach the angle cock when she was about 75 feet away. Both brakemen noted some slight decrease in train speed indicating the application of the brakes immediately before the train struck Mrs. Ellis. Her death was instantaneous.
 
 
 9
 She never attempted to get off the track. Despite the testimony of Roberts and Hill as to her glancing back, it is obvious that she did not see the approaching train and did not hear the whistle or the warning shouts of the crew. She was, and had been for many years, completely deaf.
 
 
 10
 Since Section 768.05, F.S.A. was declared unconstitutional by the Florida Supreme Court in F.E.C. Ry. Co. v. Edwards, supra, footnote [1], the plaintiffs went to trial without the benefit of the former presumption of railroad negligence created by the statute and under the same burden of proving defendant's negligence as exists in the ordinary negligence action. Further, since Section 768.06, F.S.A. was declared unconstitutional by Georgia Southern & F. Railway Company v. Seven-Up Bottling Company and Turman v. F.E.C. Ry. Co., supra, footnote [1], the plaintiffs no longer had the benefit of the comparative negligence provisions of 768.06, but rather faced a situation where the decedent's contributory negligence was a complete bar to recovery. It is our view that the plaintiffs failed to carry the burden of proving Railway's negligence and that the decedent's contributory negligence as a matter of law was proved. We are further of the view that the evidence did not disclose a situation which permitted the application of the last clear chance doctrine as it is set forth in the Florida cases. Each of these conclusions by us dictates reversal of the judgment of the district court. Our views are explicated below in the order above indicated.
 
 I.
 
 THE RAILROAD'S NEGLIGENCE
 
 
 11
 In the rural setting and under the circumstances described above, the speed of the train was reasonable. The proof indicates that proper warnings by whistle and bell were given of the approach of the train and that the train crew was maintaining a proper lookout. The plaintiffs' counsel urged on cross-examination and on argument that since the rear-end brakemen had the use of a walkie-talkie radio but did not, in view of the short length of the train (4 cars) have it with them as they rode the lead car approaching the crossing, this was somehow negligence. In actuality, however, the brakemen took up their positions in order to warn nearby motorists or pedestrians of the approach of the train, not to warn the engineer of persons or vehicles on or near the track. The walkie-talkie was a device of convenience for crews when working a train consist of a large number of cars.
 
 
 12
 When Mrs. Ellis was first observed by the brakemen she was at a sufficient distance so that she could have easily stepped out of the train's way. The crew was entitled to presume that she could hear and see, and would get off the track, and was under no duty to slow or stop the train until made aware that she would not do so.[4]
 
 
 13
 We have searched this record in vain for evidence supporting a charge of negligence on the part of the Railway. On its own track, where it had a right to be, and from which it could not turn aside, it was operating its train in a rural area at a reasonable speed. Proper warnings of the train's approach were given. Indeed, the train itself, bearing down the track, presented an impelling warning of danger. Without knowledge of the decedent's disability the train crew had a right to presume that she would take the necessary two or three steps to place her in a position of safety. When she glanced back they were entitled to presume that she saw the train. When they realized that she was not going to step aside they acted promptly and did everything in their power to avoid the injury. It was then of course too late for the railroad to avoid the injury, but Mrs. Ellis could still have saved herself by stepping off the track. Indeed, her ability to avoid the tragedy continued after the train crew was helpless to take further action. The railroad's negligence was not established.
 
 II.
 
 MRS. ELLIS' CONTRIBUTORY NEGLIGENCE
 
 
 14
 There can be no doubt that the actions of Mrs. Ellis constitute contributory negligence as a matter of law. It is not necessary for us to determine whether walking on a railroad track is per se negligent. However, it does not take a very astute legal mind to reason that it is negligent for a deaf person to walk on a railroad track without utilizing carefully the remaining sense of sight. In Atlantic Coast Line Railroad v. Timmons, 1948, 160 Fla. 754, 36 So.2d 430, the court said:
 
 
 15
 "* * * when, as here, it is conclusively shown that the plaintiff did not look or listen, that there was no obstruction whatsoever to the vision, that the accident took place in a rural community where looking and listening would have avoided it, he is guilty of negligence * * *" 36 So.2d at 431.
 
 
 16
 "* * * appellee neglected to observe the most elementary duty imposed upon him to preserve his safety. He was on notice that he was approaching a place of danger and must look out for the train, lest he suffer the consequences." 36 So.2d at 431.
 
 
 17
 The fact that Mrs. Ellis was deaf did not excuse her from the exercise of due diligence. In Florida Central & P. R. Co. v. Williams, 1896, 37 Fla. 406, 20 So. 558, supra, footnote 4, a case involving a blind person, the Supreme Court of Florida stated:
 
 
 18
 "* * * when he, in his blind condition, went about places of such known danger, due care on his part required that he should take his blindness into consideration and to provide against the extra hazards to which it subjected him. * * *" 20 So. at 562.
 
 
 19
 In L. & N. Railroad Company v. Yniestra, 1886, 21 Fla. 700, the court, quoting from an Ohio case, said:
 
 
 20
 "* * * When the party injured is an adult of ordinary mental capacity, but partially deaf, her infirmity not being known to the employees of the company will not increase their responsibilities as to care; nor will it excuse her from the full measure of care, which prudent persons partially deaf, but conscious of their infirmity, would ordinarily observe under similar circumstances."
 
 
 21
 In the same case, the court, quoting from a Missouri case, said:
 
 
 22
 "* * * Here the plaintiff * * * knew that passage of the train over the road at any hour was not an impossibility, could have seen the train before the bridge over Bear Creek, and if he had not been deaf could have heard it, could have seen it when he walked on the track if he had looked in the direction from which it was approaching, was in his right mind, his visual organs were unimpaired, but he did not look in that direction, and there were but two directions in which he had to look to see an approaching train that could have injured him. He did not look or listen, but recklessly pursued his course upon the track of the railroad, between the rails, when there was ample space north of the track on which he could have walked in safety, and yet it is urged that he was guilty of no negligence, but acted just as a prudent man would have acted under the circumstances. If, in such a case, a recovery can be had against a railroad company, the law might be declared in a very few words, that if any man crosses or walks along a railroad track and gets injured, he, or if he be killed, his representatives, may sue the company and recover damages; and all the difficulties and nice distinctions as to proximate and remote causes, and contributory and non-contributory negligence which have so embarrassed the courts would immediately vanish."
 
 
 23
 In so walking upon the track without keeping a sharp watch behind for approaching trains Mrs. Ellis was negligent, and this negligence continued until the time of impact.
 
 III.
 
 THE LAST CLEAR CHANCE DOCTRINE WAS NOT APPLICABLE
 
 
 24
 After a careful review of the record we are of the opinion that there is likewise nothing in the evidence which would permit the application of the last clear chance doctrine to this cause. Instruction on last clear chance was inappropriate and the district court erred in submitting the case to the jury on this theory.
 
 
 25
 The district court, in granting an instruction on last clear chance, relied on the case of Connolly v. Steakley, Fla. 1967, 197 So.2d 524, which indicates that continuing contributory negligence only bars application of the doctrine of last clear chance when both parties are guilty of mutual inattentiveness. We believe that the more recent pronouncements of the Supreme Court of Florida in Perdue v. Copeland, Fla.1969, 220 So.2d 617, contain the applicable law. In that case, quoting from Merchant's Transportation Company v. Daniel, 1933, 109 Fla. 496, 149 So. 401, it was said:
 
 
 26
 "* * * the last clear chance doctrine `* * * can never apply to a case where the negligence of the person injured continued up to the very moment of the injury, and was a contributory and efficient cause thereof.'" 220 So.2d at 619.
 
 Continuing, the court in Perdue stated:
 
 27
 "* * * The giving of the charge on last clear chance should be the exception and not the rule * * *. It should never be given when, as in the case at bar, the evidence shows without dispute that the plaintiff (or his decedent, in a wrongful death action) were guilty of negligence that continued up to the time of impact and was a substantial factor in the resulting collision. * * *" 220 So.2d at 620.
 
 
 28
 The law of Florida then seems to preclude an application of the doctrine of last clear chance where the injured party is guilty of negligence which continues until the occasion of the injury. As noted in Section II, above, there is no doubt that Mrs. Ellis was guilty of continuing contributory negligence.
 
 
 29
 Moreover there is absent from this case another factor which is a prerequisite for the application of the doctrine of last clear chance. In Connolly v. Steakley, supra, the court listed those necessary factors:
 
 
 30
 "* * * Among the fixed, or universal, factors are these: (1) The plaintiff must have been guilty of negligence which placed him in a position of peril; (2) There must be something about the plaintiff's situation that would serve to put the injuring party (the defendant) on notice of the fact that plaintiff is in peril; (3) The defendant must have been under a legal duty to notice and appreciate plaintiff's peril and to avoid inflicting injury upon him; (4) The defendant must have had the capability, under existing circumstances, to avoid inflicting the injury; and (5) The defendant must have failed to take advantage of the opportunity, with resulting injury to the plaintiff." (Emphasis added) 197 So.2d at 525-526.
 
 
 31
 As discussed earlier, the train crew had a right to expect, under Florida law, that a person walking on the track was in possession of all of her faculties and would remove herself from the track upon perceiving a warning from the train. Put simply, the Florida law does not require the railroad to approach those walking on the railroad track with the anticipation that they will be deaf. To the contrary, the crew may presume that the person on or near the track has full possession of her faculties of sight and hearing. The evidence clearly shows that the train crew did not realize that Mrs. Ellis would not remove herself from the tracks until it was too late to avoid the accident. It is obvious that the crew did not have the requisite capability under the existing circumstances to avoid striking the decedent.
 
 
 32
 The judgment of the district court is reversed and this case is remanded with directions to the district court to enter judgment notwithstanding the verdict in favor of the defendant-appellant.
 
 
 33
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Section 768.01 is the basic Florida Lord Campbell's Act statute. It permits recovery for death caused by the negligent acts of another to the same extent that the decedent would have been able to maintain a cause of action had he lived. Section 768.02 defines the class of survivors in the descending order of their successive exclusive rights to assert a wrongful death claim
 Section 768.03 defines the cause of action and the elements of recoverable damages in a parents' action for the death of a minor child. Section 768.04 provides for a statute of limitations upon suit brought under 768.03. Neither of these sections are involved in the present case.
 Under Florida negligence jurisprudence generally, contributory negligence is a complete bar to the plaintiff's right to recover. The decedent's contributory negligence is imputable to those entitled to maintain a wrongful death action. General Outdoor Advertising Co. v. Frost, 5 Cir. 1935, 76 F.2d 127; Carter v. J. Ray Arnold Lumber Co., Fla.1922, 82 Fla. 470, 91 So. 893.
 Section 768.05 created a rebuttable presumption of the railroad company's negligence in any injury to persons or property involving the operation of a locomotive or railroad cars. This statute was struck down as unconstitutional in Florida East Coast Ry. Co. v. Edwards, Fla. 1967, 197 So.2d 293.
 Section 768.06 prescribed a comparative negligence standard limited in its application to railroading operations. Thereunder recovery was not barred by contributory negligence but was mitigated proportionately. This section was declared unconstitutional in Georgia Southern & F. Railway Company v. Seven-Up Bottling Company, Fla.1965, 175 So.2d 39, as to property damage, and in Turman v. Florida East Coast Ry. Co., Fla.App.1967, 195 So.2d 604, as to personal injury (and necessarily of course as to a wrongful death action under Section 768.01). Since these two sections are no longer valid railroad company defendants in Florida are now liable to the same extent and are entitled to the same defenses and presumptions as any other common law tort-feasor in a wrongful death or other tort action for negligent operation of their engines and cars.
 
 
 [2]
 His estimate at trial, based on a test made a few days earlier, as opposed to a discovery deposition estimate (used by plaintiffs' counsel at trial for impeachment) of 50 to 75 feet. But of course if the impeachment was successful in destroying Simon's credibility in the jury's eyes then plaintiffs' case was bare of evidence on the point. Moore v. C. & O. Ry. Co. (1951) 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547. The deposition testimony was a guess, demonstrated by the later test to be without value. See Illinois Central R. R. Co. v. Underwood, 5 Cir. 1956, 235 F.2d 868, specifically Note 26 at page 878, cert. den. 352 U.S. 1001, 77 S.Ct. 557, 1 L.Ed.2d 546
 
 
 [3]
 Roberts was also impeached by his pre-trial deposition. Again, the deposition testimony was a rough guess while the trial testimony was based on a re-examination of the scene. See footnote [2], supra
 
 
 [4]
 These principles were set forth most clearly in the early Florida case of F.C. & P.R. Co. v. Williams, 1896, 37 Fla. 406, 20 So. 558, a case involving an injury to a blind man. The Florida court has never departed from the rule it laid down in that case: "* * * An engine driver, seeing an adult upon the track ahead of its engine, or beside the track, has the right to presume that he has possession of his faculties, and that he will obey the instinctive law of self preservation by getting off the truck if he is already on it, or that he will not get on it if already off, unless such engineer, or other person in charge of the engine knows the party, and that he labors under such disability that will prevent his getting or keeping out of the way, or that prevents his knowing of his danger, or unless he sees that the party will not or cannot get or keep out of the way. * * *" This controlling rule of law has been followed by the Florida Supreme Court without deviation in numerous cases including Martin v. Rivers, Fla.1954, 72 So.2d 789; McAllister v. Tucker, Fla. 1956, 88 So.2d 526, and Atlantic Coast Line Railroad Company v. Walker, Fla. App.1959, 113 So.2d 420. In Martin v. Rivers, supra, in reversing a judgment for plaintiff whose husband was killed when struck by a train which was approaching with its motors cut off and its brakes applied, the court said: "The fireman had the right, from the facts in the record here, to believe that the deceased was in possession of his faculties and his normal senses, and that with all of the signals of danger, the extent of which were almost overwhelming, he would not walk directly into the path of a moving train. When the fireman finally realized that the deceased was not going to stop and was not going to heed every danger signal possible to give, it was too late for any human agency to extricate the deceased from the situation that he placed himself in or prevent the death which so unfortunately occurred"
 
 
 
 34
 AINSWORTH, Circuit Judge (dissenting).
 
 
 35
 I respectfully dissent, being of the view that the District Judge correctly submitted this case to the jury under the doctrine of last clear chance as interpreted by Florida law. Accordingly, I would not disturb the jury verdict which awarded substantial damages to plaintiffs. See Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365. I agree with plaintiffs' contention that the defendant railroad had ample opportunity to avoid the accident after discovering that deceased was in a position of peril of which she was apparently unaware.